Raul **MUNOZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 01–08–00084–CR, 01–08–00085–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 12, 2009.

Glenn J. Youngblood, Houston, TX, for Appellant.

Alan Curry, Chief Prosecutor, Appellate Division, Harris County District Attorney's Office, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and HANKS.

## OPINION

SHERRY RADACK, Chief Justice.

A jury convicted appellant, Raul Munoz, of two charges of aggravated sexual as-

sault of a child under the age of 14 [1] and assessed punishment at confinement for life on each charge. In two related points of error, appellant contends the trial court erred in admitting hearsay evidence through the testimony of a licensed master social worker. We affirm.

## BACKGROUND

When Jane [2] was nine years old, CPS removed her from her parents' care because of physical and medical neglect and placed her in a foster home. While in foster care, Jane told Patsy Williams that she had been sexually abused by appellant, her father. Jane was then interviewed and medically examined at the Children's Assessment Center. Pam Ostaszewski, a licensed master social worker, was assigned to Jane's case, and Jane began weekly therapy sessions with Ostaszewski, which continued through the time of trial.

At trial, Jane testified about how her father had sexually abused her. The State also called Ostaszewski, who testified about her therapy sessions with Jane. Appellant objected that Ostaszewski's testimony, and the records of her sessions with Jane, were replete with hearsay and should be excluded. The State responded that Ostaszewski's testimony and records were admissible under Rule of Evidence 803(4) as statements made for the purpose of medical diagnosis and treatment. The trial court overruled appellant's objection and permitted Ostaszewski to testify about her therapy sessions with Jane. Ostaszewski's records from her therapy sessions with Jane were also admitted.

### Admission of Therapists' Testimony Under Texas Rule of Evidence 803(4)

In two related points of error, appellant contends the trial court erred by allowing hearsay to be admitted through Ostaszewski's testimony and records regarding her therapy sessions with Jane. Specifically, appellant argues that, because Ostaszewski is not a nurse or physician, any statements made to her by Jane were not for the purpose of medical diagnosis or treatment.

### *Standard of Review*

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State,* 97 S.W.3d 589, 595 (Tex.Crim.App.2003); *Roberts v. State,* 29 S.W.3d 596, 600 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani,* 97 S.W.3d at 595; *Roberts,* 29 S.W.3d at 600. An abuse of discretion occurs only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Zuliani,* 97 S.W.3d at 595; *Roberts,* 29 S.W.3d at 600.

### *Heasay and the Exception for Statements Made for Diagnosis or Treatment*

Hearsay—a statement, other than one made by the declarant while testifying at trial or a hearing, offered in evidence to prove the truth of the matter asserted—is generally inadmissible at trial. TEX.R. EVID. 801(d), 802. However, "[s]tatements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible as an exception to the hearsay rule. TEX.R. EVID. 803(4)

---

1. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (Vernon Supp.2008).

2. Jane is a fictitious name used to protect the identity of the child victim.

Rule 803(4) is premised on the declarant's desire to receive an appropriate medical diagnosis or treatment, and the assumption that the declarant appreciates that the effectiveness of the diagnosis or treatment may depend on the accuracy of the information provided. *See Burns v. State,* 122 S.W.3d 434, 438 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd); *Moore v. State,* 82 S.W.3d 399, 413 (Tex. App.-Austin 2002, pet. ref'd) (Patterson, J., concurring); *Sneed v. State,* 955 S.W.2d 451, 453 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd); *Fleming v. State,* 819 S.W.2d 237, 247 (Tex.App.-Austin 1991, pet. ref'd). " 'Thus, the declarant's motive in making the statement must be consistent with the purpose of promoting treatment.' " *Austin v. State,* 222 S.W.3d 801, 811 (Tex.App.-Houston [14th Dist.] 2007, pet. filed); *accord Jones v. State,* 92 S.W.3d 619, 623 (Tex.App.-Austin 2002, no pet.); *Sandoval v. State,* 52 S.W.3d 851, 856 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). The witness, however, need not expressly state that the hearsay declarant recognized the need to be truthful in her statements for the medical treatment exception to apply. *Wright v. State,* 154 S.W.3d 235, 241 (Tex.App.-Texarkana 2005, pet. ref'd). Instead, the reviewing court must look to the record to determine if it supports a conclusion that the declarant understood the importance of honesty in the context of medical diagnosis and treatment. *See Beheler v. State,* 3 S.W.3d 182, 188–89 (Tex.App.-Fort Worth 1999, pet. ref'd).

Appellant argues that before a witness can relate an out-of-court statement made for the purposes of medical diagnosis or treatment under rule 803(4), the State must show that the witness has medical "qualifications." However, in *Taylor v. State,* 268 S.W.3d 571, 587 (Tex.Crim.App. 2008), the Court of Criminal Appeals rejected that argument. In so holding, the court stated that "[t]he essential 'qualification' expressed in the rule is that the declarant believe that the information he conveys will ultimately be utilized in diagnosis or treatment of a condition from which the declarant is suffering, so that his selfish motive for truthfulness can be trusted." *Id.* The Court of Criminal Appeals then set up a two-part test for determining whether this requirement had been met. First, the statement must be made for the purpose of diagnosis or treatment, and the declarant must know that it is made for the purpose of diagnosis and treatment. *Id.* at 588–89. Second, the statements must actually be pertinent to diagnosis or treatment. *Id.* at 591

*Made for Purpose of Diagnosis or Treatment?*

The first prong requires that the proponent of the evidence show that the out-of-court declarant was aware both that the statements were made for the purpose of medical diagnosis or treatment and that a proper diagnosis or treatment depended on the truth of such statements. *Id.* at 589. In the context of statements made by a child to a therapist, "it is incumbent upon the proponent of the hearsay exception to make the record reflect both (1) that truth-telling was a vital component of the particular course of therapy or treatment involved, and (2) that it is readily apparent that the child-declarant was aware that this was the case." *Id.* at 590. Further, "in the context of long-term, on-going, after-the-fact mental-health treatment, the proponent should make it readily apparent on the record (1) that it was important to the efficacy of the treatment (if, in fact, it was important) for the child-declarant to disclose the true identity of the perpetrator, and (2) that the child, prior to the disclosure understood that importance." *Id.* at 591.

■ Thus, we consider whether there was evidence in the record that it was important for Jane to tell her therapist the truth about the alleged abuse and whether Jane knew that it was important to tell the truth. There is evidence that Jane knew that she was being treated for depression and the manifestation of that depression and that she was aware that statements made to Ostaszewski during her therapy—including the identity of her abuser—were made in furtherance of this treatment. Jane testified that she was seeing a therapist and was being given medication for depression. Jane further testified that during her therapy she talked with her therapist about the sexual abuse and feelings associated with the sexual abuse. Ostaszewski testified that child victims of sexual abuse often suffer from extreme feelings of guilt because they feel that they are at fault. Pamela Ostaszewski, Jane's therapist, testified that Jane felt very guilty because she had disclosed the sexual abuse and because her father might go to jail as a result. Ostaszewski also testified that Jane suffered from eunuresis, or bedwetting, and that as trial dates approached Jane would stop bathing and taking care of herself, all of which were manifestations of childhood depression. Finally, Ostaszewski testified that Jane, as a result of the sexual abuse, had inappropriate sexual feelings, which she often acted on. In fact, Jane had been removed from one foster home for inappropriate sexual contact with a young boy in the home.

Also of key importance was the fact that Jane's abuser was her father, not a stranger. As noted by the Court of Criminal Appeals in *Taylor*, in such circumstances it would be important for the therapist to know the identity of the perpetrator so as to fully discover the extent of the child's emotional and psychological injuries, "particularly when the perpetrator might be a family or household member[,] and it is important to remove the child from the abusive situation." *Id.* at 591.

The more difficult issue to assess is whether Jane was aware that it was important to tell her therapist the truth. There is evidence in the record that Jane had a problem with telling lies and making things up. Ostaszewski testified that Jane would often lie about things like wetting her bed at night and about taking things that did not belong to her so that she would not get in trouble. Ostaszewski testified that she explained to Jane that often it was not the bad act that got Jane into trouble, but her lying to cover it up. Ostaszewski also testified that, during her therapy sessions, Jane always acknowledged when she said something that was not true, but that she had never recanted her allegations against her father.

At another point, Ostaszewski testified as follows:

Q: Now, clearly through during [sic] your whole therapy, your whole experience with [Jane], you wanted to stress that she needs to tell the truth, is that correct?

A: That is correct.

Based on this record, we conclude that the State presented evidence that the therapist impressed on Jane that it was important for Jane to tell her therapist the truth about her sexual abuse, including the identity of the perpetrator, in order to facilitate the therapist in treating Jane's depression and the other manifestations of the abuse, such as bedwetting and acting out sexually with other children. Furthermore, there is evidence in the record that, although Jane had difficulty telling the truth and often lied to escape the consequences of her actions, she was aware of the need to be truthful with her therapist, and she always acknowledged to her therapist when she had been untruthful.

Therefore, we conclude that the State has met its burden on the first element of the *Taylor* test.

*Pertinent to Diagnosis or Treatment?*

█ The second prong of the test requires the proponent of the hearsay evidence to show that the particular statement proffered is pertinent to the treatment, or that it was reasonable for the therapist to rely on the particular information contained in the statement in treating the declarant. *Id.* at 591. "This includes showing that a statement from a child-declarant revealing the identity of the perpetrator of sexual abuse is pertinent." *Id.* "[K]nowing who is at fault for the emotional or psychological trauma may not be critical to every treatment plan, especially if the perpetrator was not a family or household member." *Id.* However, here the perpetrator was a family member— Jane's father.

Thus, we consider whether it was reasonable for Ostaszewski to rely on this particular information in treating Jane. As stated earlier, Ostaszewski testified that Jane had a problem with bedwetting and acting in an inappropriately sexual manner with other children. She was removed from one foster home for inappropriate sexual contact with a young boy in the same foster home. She was also caught kissing boys on the mouth, masturbating, and acting in an inappropriately sexual manner for a 10–year–old girl. Ostaszewski testified that these are behaviors commonly seen in child victims of sexual abuse. As such, the facts related to Ostaszewski by Jane about her sexual abuse are pertinent Ostaszewski's treatment of Jane.

Additionally, Jane's identification of her father as her abuser is pertinent to Ostaszewski's treatment of Jane. Ostaszewski testified that Jane was suffering from depression and that she felt very guilty about

telling others about the abuse, breaking up her family, and causing her father to go to jail. Jane felt that somehow she had caused the abuse. Thus, in this case, knowing the identity of the abuser, and that it was a family member, would be helpful in treating Jane's depression. *See United States v. Renville*, 779 F.2d 430, 436 (8th Cir.1985) (holding that child victim's statement that abuser is member of family is pertinent to treatment). It is also important that Jane's outcry regarding the sexual abuse came shortly after Jane had been removed from her father's home because of neglect. As such, the identity of her father as her abuser was of critical importance in preventing further harm or abuse by preventing Jane's return to her father's home or any visitation with him.

Because we hold that the State presented evidence to support both prongs of the *Taylor* test, we conclude that the trial court did not err by admitting Ostaszewski's testimony and records.

## CONCLUSION

We overrule appellant's sole point of error and affirm the judgments of the trial court.