

# NUMBER 13-11-00430-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CRISTINA GONZALEZ TIJERINA,            Appellant,

v.

THE STATE OF TEXAS,            Appellee.

### On appeal from the 284th District Court
### of Montgomery County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Vela, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant, Cristina Gonzalez Tijerina, appeals her conviction for injury to a child by omission, a first-degree felony.[1]  *See* TEX. PENAL CODE ANN. § 22.04(b)(2) (West 2011). Following a jury trial, appellant was found guilty and sentenced to a term of ten years of confinement in the Texas Department of Criminal Justice, Institutional Division.  By three

---

[1] Pursuant to a docket-equalization order by the Supreme Court of Texas, this case is before us on transfer from the Ninth Court of Appeals, Beaumont, Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

issues, appellant argues: (1) the evidence was insufficient to support her conviction; (2) the trial court erred by excluding recorded statements; and (3) the trial court erred by admitting testimony from a licensed professional counselor in violation of the hearsay rule and the Confrontation Clause of the United States Constitution. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

On August 31, 2009, at around 6:30 p.m., paramedics responded to a 911 call from appellant's home. Upon arrival, they were led to three-year-old David Tijerina who was receiving CPR. The paramedics took over the CPR and transported him to a hospital, where he was pronounced dead shortly after arrival at the hospital.

Appellant was David's grandmother. David lived in appellant's house, along with twelve other people. David's mother, Daisy, passed away before his death, after a drug overdose. Crystal Tijerina (David's aunt/appellant's daughter) was David's custodian. Appellant, along with Steven Chauvin (appellant's boyfriend), Christopher Dore (Daisy's former boyfriend), and appellant's eleven-year-old son lived in the home's downstairs apartment. Crystal, Noah Herrera[3] (Crystal Tijerina's boyfriend), and her four children lived in the home's upstairs apartment. David also lived in the upstairs apartment.

The record shows that the children regularly moved between the upstairs living area and the downstairs living area. Chauvin testified that appellant often bought food for the children. Eric Stowe lived in a building next to the main house. He testified that it was normal for

---

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[3] Noah Herrera was convicted of the capital murder of David. *See also Herrera v. State*, No 13-11-00036-CR, 2011 WL 5005581, at *9 (Tex. App.—Corpus Christi Oct. 20, 2011, pet. ref'd) (mem. op., not designated for publication).

2

appellant to babysit two or three of the children at a time. Christopher Dore testified that the children were always coming downstairs needing things. He also testified that appellant often told the children to stay quiet and behave.

On the day of David's death, appellant returned home at around 3:00 p.m., after purchasing groceries. David told her that he was thirsty, and he was given some milk. About an hour later, appellant was told that David was not feeling well and she asked that David be brought to her. Appellant tried to feed him. However, after each feeding attempt, David vomited up the food. At that time, David was clothed only with a towel, as he had been recently bathed and they didn't have any diapers.

Stowe testified that, at some point between 4:00 p.m. and approximately 6:30 p.m., when 911 was called, Stowe and appellant discussed David's illness. Appellant said that David was not feeling well, but that she thought he was probably faking it. Chauvin stated David was acting lethargic, seeming to fall asleep. He also testified that when he saw David, he immediately knew something was wrong. Chauvin testified that he wanted to call 911, but that Crystal and appellant wanted to buy diapers for David before he made the call. Crystal was worried that taking a naked child to the hospital would raise the suspicions of Child Protective Services, which was already investigating their living conditions. Chauvin and Herrera left to buy diapers. Chauvin believed that David was still alive when he left to go buy the diapers.

After Chauvin left, Stowe entered the room where Crystal and appellant were talking alongside David. Stowe testified that David was lying on a piece of plastic, staring blankly at the ceiling, with vomit covering his chest. Stowe said that this sight caused him to immediately decide to take David to the hospital. However, after Crystal noticed that David was not

3

breathing, Stowe began performing CPR, while someone called 9-1-1. The 9-1-1 call was placed at 6:42 pm. Stowe said that as he began performing CPR, David's body felt cold. Eyewitnesses, both before and after the paramedics arrived, testified that they noticed David's bruises on his face and body as well as his distended stomach.

Dr. Joseph Allen, a pediatrician who specializes in pediatric emergency medicine, treated David upon his arrival at the emergency room at 7:20 p.m. David's body temperature at that time was 93 degrees, suggesting that he passed away well before the 9-1-1 call was placed. One of the first things Dr. Allen and his colleagues noticed was that David "was covered with a tremendous number of bruises." David's face, both hips, and abdomen each had large, dark bruises. His back was bruised, and he had bruises on his forehead, left temple, left lower eyelid, and left and right sides of his jaw. He also had bruises "in his eyes" and large abrasions on his head and scalp.

Dr. Allen also noticed that David's stomach was distended. He was very small and thin for his age, which made his distended stomach stand out. It felt firm like a stretched water balloon. Efforts to empty David's stomach revealed that it did not contain any liquid. Dr. Allen testified that the paramedics who treated David before his arrival at the hospital reported that David had choked on some milk. However, in conjunction with the bruises on his body, David's empty stomach signified that the distention of his stomach was caused by internal bleeding in his abdominal cavity. David was pronounced dead at 7:26 p.m., after six unsuccessful attempts to resuscitate him.

An autopsy revealed that David died of "blunt abdominal trauma," and that his death resulted from a homicide. The autopsy report showed that David suffered from internal bleeding in his head, neck, liver, pancreas, adrenals, spleen, intestines, bladder, surface of the

4

kidneys, and in various muscles (rib, abdominal, and back muscles). At the time of his death, David had approximately thirty-five to forty percent of his total blood volume in his abdomen, "a significant, life threatening hemorrhage."

Dr. Allen described how death by internal bleeding is a "prolonged process" in which the person dies relatively slowly. At first, the child's stomach would be tender and feel very painful due to "organ injuries that are hurting them." At this stage, a child would be "screaming in pain." Later, as vital organs lose blood due to internal bleeding, the child would become less energetic and lifeless, but would still exhibit pain if the abdomen was touched. The child would appear pale, cold, and increasingly unresponsive. Dr. Allen testified that the abnormality in behavior in a three-year-old in this condition would be obvious to anyone who saw the child on a day-to-day basis.

Dr. Allen testified that earlier medical treatment would have increased David's chance of survival. David's condition was such that anyone would have known something was wrong, regardless of medical training. Specifically, Dr. Allen testified that any lay person of "normal mental status, who is not severely mentally handicapped," who saw David at 3:00 p.m. or afterward on the day of his death, would have recognized that David had a "major illness or injury." Dr. Allen testified that the correct lay assessment of a child in David's condition would be that he needed to go to the hospital. A decision to get diapers prior to calling 9-1-1 or going to the hospital raised significant concern about a person's judgment and a "person's concern for the welfare of the child."

## II. ANALYSIS

Appellant claims that (1) the evidence was insufficient to sustain her conviction of injury to a child because it did not show she had a duty to care for David and it did not show she acted

with the requisite criminal intent; (2) the trial court erred in excluding Crystal's and appellant's recorded statements; and (3) the trial court erred in admitting Burbank's testimony.

## A. Sufficiency of the Evidence

The evidence is insufficient if, when viewed in a light most favorable to the verdict, a rational jury could not have found each element of the offense beyond a reasonable doubt. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia,* 443 U.S. 307 (1979)). In evaluating a legal-sufficiency challenge, we consider all of the evidence and view it in the light most favorable to the verdict. *Jackson*, 443 U.S. at 319. The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact is the sole judge of the credibility of the witnesses and of the strength of the evidence. *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim. App. 1997) (citing *Jackson*, 443 U.S. at 319).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is

one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Villarreal*, 286 S.W.3d at 327.

## 1. Elements of the Offense

Under the Texas Penal Code, a person commits the offense of injury to a child if he intentionally or knowingly by omission causes a child serious bodily injury. TEX. PENAL CODE ANN. § 22.04(a)(1). An omission that causes serious bodily injury is conduct constituting an offense if the actor has "assumed care, custody, or control of a child . . . ." *Id.* § 22.04(b)(2). A person assumes care, custody, or control by acting in such a way "as to cause a reasonable person to conclude that she has accepted responsibility for protection, food, shelter, and medical care for [the] child . . . ." *Id.* § 22.04(d); *see also Hicks v. State*, 241 S.W.3d 543, 546 (Tex. Crim. App. 2007). The jury was instructed to find appellant guilty if it found that appellant either intentionally or knowingly by omission caused serious bodily injury to David "by failing to provide reasonable medical care in a timely manner."

## 2. Whether Appellant Assumed Care, Custody, or Control of David

Appellant argues that the evidence is legally insufficient to show that she had a legal duty to care for David. Appellant, emphasizing that she did not have legal custody of David, contends that the evidence merely shows she voluntarily assisted Crystal as a non-custodial grandparent, and that Crystal was the one who was ultimately responsible for David's care and well-being.

For a conviction due to omission, the State must establish that the defendant had a duty to act. *See State v. Guevara*, 137 S.W.3d 55, 56 (Tex. Crim. App. 2004). A duty exists when

7

a person is responsible for the care, custody, or control of the injured person.  TEX. PENAL CODE ANN. § 22.04(d).   The law does not require that the defendant have legal custody of the child or exclusive care custody or control.    *See Rey*, 280 S.W.3d 265, 267–69 (Tex. Crim. App. 2009) (citing *Hicks v. State*, 241 S.W.3d 543 (Tex. Crim. App. 2007)).    No familial relationship is necessary to establish a duty to act.   *See Hawkins v. State*, 891 S.W.2d 257, 259 (Tex. Crim. App. 1994) (holding a live-in boyfriend of the injured child's mother could have a duty to act).   This offense does not limit the duty to act to a single individual, and multiple people living in a single household may each have an individual duty to act on behalf of a child.   *See Hawkins*, 891 S.W.2d at 258; *see also Deleon v. State*, No. 04-05-00369-CR, 2006 Tex. App. LEXIS 5270, at *22 (Tex. App.—San Antonio June 21, 2006, pet. ref'd) (mem. op., not designated for publication) (finding grandmother assumed care, custody, or control because she watched the child in the absence of the child's mother and regulated the child's food consumption, medical attention, and movement).

Several witnesses testified about appellant's role in the family.   Appellant owned the home where they lived.   Although appellant lived on the ground floor of the apartment home, and David lived with Crystal and Noah on the second floor, Chauvin testified that the only functioning kitchen was upstairs, and the only fully-functional bathroom was downstairs. Appellant bought groceries for Crystal, Noah, and the children.   David and the other children were frequently in appellant's apartment, and Stowe testified that appellant was always watching one or more of them.   Appellant additionally assisted in the children's day-to-day care, including bathing, feeding, and disciplining the children.

As David's condition worsened, one of the other children bathed David in appellant's apartment, wrapped him in a towel, and handed him to appellant after appellant told her to

8

"[b]ring him to me." Chauvin testified that when David was handed to appellant, David was in a serious condition and in need of emergency medical care. According to Chauvin, David had a conspicuous bruise on his forehead and looked as though he kept falling asleep. Chauvin had never seen David act like this before and was concerned. Between 4:00 p.m. and 6:42 p.m., appellant held David and attempted to feed him a banana, a drink, and "Raman noodles," but each time she tried, David vomited the food.

We hold that a rational jury could have found that appellant assumed care, custody, or control over David. *See Jackson*, 443 U.S. at 319.

### 3. Whether Appellant Intentionally or Knowingly Failed to Seek Medical Care[4]

Appellant argues that the evidence is legally insufficient to show that she "intentionally and knowingly"[5] failed to provide reasonable medical care in a timely fashion. Appellant contends that there is no evidence to show that appellant knew that David was suffering from life threatening injuries, as opposed to the stomach flu.

Injury to a child by omission is a 'result of conduct' offense. *Williams v. State,* 294 S.W.3d 674, 684 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (citing *Alvarado v. State,* 704 S.W.2d 36, 39 (Tex. Crim. App. 1985)). This means that the culpable mental state relates not to the nature or circumstances surrounding the charged conduct, but to the *result* of that

---

[4] Appellant also argues the evidence is insufficient to show she acted recklessly. When a person's omission intentionally or knowingly causes a child serious bodily injury, the offense is a first-degree felony. TEX. PENAL CODE ANN. § 22.04(e). When a person's omission recklessly causes a child serious bodily injury, the offense is a second-degree felony. *Id.* Because appellant was charged with acting knowingly, and because we conclude the evidence was sufficient to show beyond a reasonable doubt that appellant acted knowingly, we need not reach appellant's sub-issue concerning the legal sufficiency of the evidence to show appellant acted recklessly. *See* TEX. R. APP. P. 47.1.

[5] In her brief, appellant complains that the State did not prove she acted "intentionally *and* knowingly." Under the applicable legal standard, the State was not required to prove both mental states. We do not treat appellant's use of the conjunctive rather than the disjunctive as an issue on appeal because appellant has not included argument or citation to legal authority in support of any contention that the State was required to prove both mental states. *See* TEX. R. APP. P. 38.1(i).

conduct. *Id.* (citing *Thompson v. State,* 227 S.W.3d 153, 159 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd)). In other words, the accused must have acted with the requisite culpable mental state to effect the result. *Id.* In *Jefferson,* the Texas Court of Criminal Appeals stated that "the essential element or focus of the statute is the result of the defendant's conduct (in this case, serious bodily injury to a child) and not the possible combinations of conduct that cause the result." *Jefferson,* 189 S.W.3d 305, 312 (Tex. Crim. App. 2006).

The evidence is sufficient to support a defendant's conviction for injury to a child by omission under section 22.04(a) of the Penal Code if the State proves *either* that a defendant intended to cause the injury through her omission or that she was aware that her omission was reasonably certain to cause the injury. *Johnson v. State,* 150 S.W.3d 630, 636 (Tex. App.—Austin 2004, no pet.). A person acts intentionally, or with intent, with respect to the result of her conduct when it is her conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West 2011). A person acts knowingly, or with knowledge, with respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result. *Id.* § 6.03(b); *see also Byrd v. State*, 112 S.W. 3d 675, 678 (Tex. App.—Fort Worth 2003, pet. ref'd); *Payton v. State*, 106 S.W.3d 326, 331 (Tex. App.—Fort Worth 2003, pet. ref'd). Eyewitness testimony concerning a child's appearance can provide evidence of the extent of a defendant's awareness of the child's condition. *See Payton*, 106 S.W.3d at 328–30 (finding a jury could reasonably conclude the grandfather knew the eighteen-month-old child was seriously injured because paramedics immediately noticed the bruises and distended stomach caused by internal bleeding).

The jury may infer both intent and knowledge from any facts that tend to prove the existence of these mental states, including the defendant's acts, words, or conduct, and from

10

the nature of the injury inflicted on the victim. *Hart v. State,* 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). In satisfying the elements of this offense, the State may use both direct and circumstantial evidence. *See Nadal v. State*, 348 S.W.3d 304, 310 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

The evidence shows that Chauvin saw David immediately after his bath when he was given to appellant. Chauvin testified it was "a no-brainer" that David needed immediate medical assistance because of his serious condition. Yet, appellant kept him for over two hours without seeking any medical help.

Appellant discussed the severe bruising of David's stomach and watched as David's condition progressively became worse. David was wrapped only in a towel, had an obvious distended stomach and was severely bruised. Appellant made no effort to take David to the hospital or otherwise seek medical assistance, notwithstanding his condition going from vomiting, to becoming highly lethargic, to having difficulty holding his head up, and ultimately to lying motionless with his eyes fixed on the ceiling. Appellant and Crystal appeared more concerned about how David's bruises and lack of a diaper might affect the pending CPS investigation and Crystal's custody of the other children.

Dr. Allen's testimony showed the gravity of David's condition in the time period that appellant kept him. Dr. Allen testified it would have been obvious to any adult of normal intelligence, particularly someone who saw David day-to-day, that he needed immediate medical help. Dr. Allen added that failure to take David to the hospital in this time period showed a lack of concern for David's welfare.

Appellant argues that she mistakenly believed that David had the flu or sustained injuries due to a car accident. However, the source of David's injuries is irrelevant. The jury

11

could reasonably conclude that appellant knew about David's serious medical condition and knowingly caused serious bodily injury by failing to seek reasonable medical care in a timely manner. Therefore, the record contains legally sufficient evidence to support the *mens rea* element of injury to a child, by omission. *See Jackson*, 443 U.S. at 319. We overrule appellant's first issue.

## B. Trial Court's Exclusion of Statements from Evidence

By her second issue, appellant claims that the trial court erred by excluding Crystal Tijerina's and appellant's video statements and appellant's written statement. Appellant's issue presents nothing for appellate review because appellant failed to support this issue with appropriate citations to the record. *See* TEX. R. APP. P. 38.1(i) (providing the brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record); *Castillo v. State*, 186 S.W.3d 21, 24 (Tex. App.—Corpus Christi 2005, pet. ref'd); *see also Cook v. State*, 611 S.W.2d 83, 87 (Tex. Crim. App. [Panel Op.] 1981) ("This court with its tremendous caseload should not be expected to leaf through a voluminous record hoping to find the matter raised by appellant and then speculate whether it is that part of the record to which appellant had reference."). Appellant neither cited to the record or otherwise quoted the record in relevant part, so as to allow this Court to make a proper review. Appellant's second issue is overruled.

## C. Trial Court's Admission of Burbank's Testimony

By her third issue, appellant argues that the trial court erred in admitting the testimony of Theresa Burbank, a licensed professional counselor, that F.T., [6] one of appellant's grandchildren, perceived appellant to play an active role in the day-to-day care of the children

---

[6] We use the alias "F.T." to protect the identity of the minor child-declarant.

and to be the disciplinarian for all of the grandchildren, including David.   Appellant asserts that this testimony was inadmissible for two reasons.   First, appellant claims that the State did not meet its burden of demonstrating that the testimony comes within the hearsay exception for statements made for purposes of medical diagnosis or treatment.   *See* TEX. R. EVID. 803(4). Second, appellant claims that the testimony violates the Confrontation Clause of the United States Constitution because appellant was not afforded an opportunity to cross-examine the child-declarant at trial.   *See* U.S. CONST. amend. VI. We disagree.

### 1.  Statements Made for Purposes of Medical Diagnosis or Treatment

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.   *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).   That is to say, as long as the trial court's decision was within the zone of reasonable disagreement, the appellate court should affirm.   *Id.*

Hearsay is inadmissible "except as provided by statute or [the Texas Rules of Evidence] or by other rules prescribed pursuant to statutory authority."   TEX. R. EVID. 802.  After the opponent of hearsay evidence makes the proper objection, the burden is on the proponent of the evidence to establish the evidence is admissible under an exception to the hearsay rule. *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008).   One such hearsay exception is embodied in Texas Rule of Evidence 803(4) which provides as follows:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

TEX. R. EVID. 803(4).  The essential qualification expressed in the rule is that the declarant believes that the information he conveys will ultimately be utilized in diagnosis or treatment of a

13

condition from which the declarant is suffering, so that his selfish motive for truthfulness can be trusted. *Taylor*, 268 S.W.3d at 587. The Texas Court of Criminal Appeals established a two-part test for determining whether this requirement had been met. *Munoz v.* State, 288 S.W.3d 55, 58 (Tex. App.—Houston [1st Dist.] 2009, no pet.). First, the statement must be made for the purpose of diagnosis or treatment, and the declarant must know that it is made for the purpose of diagnosis and treatment. *Id.* (citing *Taylor*, 288 S.W.3d at 588–89). Second, the statements must actually be pertinent to diagnosis or treatment. *Id.* (citing *Taylor*, 288 S.W.3d at 591). Under *Taylor*, in the context of statements made by a child to a therapist, it is also incumbent upon the proponent of the hearsay exception to establish (1) truth-telling was a vital component of the particular course of therapy; and (2) it was readily apparent that the child-declarant was aware that this was the case. *See* 268 S.W.3d at 590; *see also Munoz*, 288 S.W.3d at 58.

The State met its burden to show the child's statements to Burbank were admissible under the hearsay exception for statements made for purposes of medical diagnosis or treatment. Burbank was a licensed professional counselor who provided children therapy relative to trauma they experienced. The child-declarant, F.T., was one of appellant's grandchildren. At the time of trial, F.T. was five years old and had been receiving therapy from Burbank for approximately six months. CPS referred F.T. to Burbank for therapy because of "some behavioral patterns" her case worker, CASA, and her foster parents saw. During the initial sessions with F.T., Burbank interacted with her to determine whether she was capable of working in a "therapeutic context" and whether she understood the difference between truth and a lie. Burbank also explained to F.T. that her office was a safe place where she could be

14

open and honest. Burbank testified that F.T. understood the difference between truth and a lie and that she appeared to understand it was important to be open and honest with Burbank.

F.T. was able to identify for Burbank the members of her family of origin and the members of her foster family. She identified the members of her family of origin using a dollhouse and various family figures. It was in this context that F.T. identified appellant as her grandmother and as someone who played an active role in her day-to-day care and as a disciplinarian for herself and the other grandchildren, including David. Burbank needed to establish the family structure to address F.T.'s therapeutic needs. On this record, we cannot conclude the trial court abused its discretion by admitting Burbank's testimony because the State met the requirements of the hearsay exception for statements made for purposes of medical diagnosis or treatment. *See* TEX. R. EVID. 803(4); *Taylor*, 288 S.W.3d at 590–91; *see also Luna v. State*, 264 S.W.3d 821, 830 (Tex. App.—Eastland 2008, no pet.) (holding licensed professional counselor's testimony regarding statements made by four-year-old receiving treatment for post-traumatic stress disorder was admissible under Texas Rule of Evidence 803(4)).

### 2. Confrontation Clause

Appellant also argues the admission of Burbank's testimony violated the Confrontation Clause because appellant "was not afforded the opportunity to cross-examine the declarant." *See* U.S. CONST. amend. VI. The threshold question for possible Confrontation Clause violations is whether the statement is testimonial or nontestimonial. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). If the statement is testimonial, it is inadmissible unless the declarant is unavailable and the defendant had a previous opportunity to cross-examine. *See id.*; *Coronado v. State*, 351 S.W.3d 315, 322 (Tex. Crim. App. 2011). However, if the statement is

15

nontestimonial, admitting the statement does not implicate the Confrontation Clause. *Id.* Whether a statement is testimonial or nontestimonial is a question of law, which this Court reviews de novo. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010).

Whether a statement is testimonial or nontestimonial rests on the primary purpose of the interrogation. *Michigan v. Bryant*, 131 S. Ct. 1143, 1156 (2011). When the primary purpose is something other than criminal investigation, "the Confrontation Clause does not require such statements to be subject to the crucible of cross-examination." *Id.* at 1157. Generally, statements made for the purpose of medical diagnosis or treatment have a primary purpose other than the pursuit of a criminal investigation. *See id.* at 1157 n.9. However, a statement is testimonial when the circumstances indicate that the interviewer's primary purpose was to establish past events to aid criminal prosecution. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

In *De La Paz*, a social worker interviewed the child-declarant after the defendant was a suspect and reported the findings to the police. *Id.* at 681; *see also Rangel v. State*, 199 S.W.3d 523, 532–37 (Tex. App.—Fort Worth 2006, pet. granted) (questioning of a four-year-old by a Child Protective Services investigator was testimonial). However, the statements are nontestimonial when the relationship between child-declarant and therapist is primarily one of counseling rather than trial preparation. *Lollis v. State,* 232 S.W.3d 803, 808–09 (Tex. App.—Texarkana 2007, no pet.) (finding statements made by a five and a seven-year-old were nontestimonial because the statements were made "in the course of treatment to deal with behavioral problems and abuse issues").

Here, Burbank's testimony did not violate the Confrontation Clause because F.T.'s statements were nontestimonial. Unlike *De La Paz*, the primary purpose of the therapy

16

session was not criminal investigation, and Burbank did not immediately report her findings to the police.  *See De La Paz*, 273 S.W.3d at 681.  Like *Lollis*, the primary purpose of the interaction between F.T. and Burbank was one of counseling rather than trial preparation.  *See Lollis,* 232 S.W.3d at 808–09.  According to Burbank's testimony, the role playing games of identifying family members was normal procedure in her therapy practice.  As the child was in therapy because of trouble adjusting to her new foster family, a customary discussion of family roles during therapy does not suggest a primary purpose of criminal investigation.  Further, the record gives no indication of cooperation between Burbank and the police.  *See id.* at 808.  Inasmuch as the primary purpose of the therapy session was not for a criminal investigation, the child-declarant's statements are nontestimonial.  Therefore, the admission of Burbank's testimony does not violate the Confrontation Clause.  We overrule appellant's third issue.

### III. CONCLUSION

We affirm the trial court's judgment.

Gregory T. Perkes
Justice

Do not publish.  TEX. R. APP. P. 47.2(b).

Delivered and filed the
16th day of August, 2012.

17