**Opinion issued June 20, 2024**



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-22-00668-CR

_____

**ANTHONY PEREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1604304**

---

## O P I N I O N

Anthony Perez appeals his conviction for the first-degree felony offense of aggravated sexual assault of a child younger than six years old. *See* TEX. PENAL CODE §§ 22.021(a)(1)(B)(ii); 22.021(f)(1). He was found guilty by a jury, and the trial court assessed his punishment at 34 years' imprisonment without the

possibility of parole. On appeal, he argues that the trial court erred by: (1) admitting outcry witness testimony, (2) admitting a medical report naming him as the abuser, (3) denying his motion for mistrial, and (4) limiting the evidence he could present for impeachment. We affirm.

## Background

This case concerns sexual abuse of a five-year-old girl, L.V., by Perez, who was L.V.'s mother's boyfriend. At trial, L.V.'s mother testified that she met Perez in March 2013, when L.V. was two years old. They had a son together in February 2014, and soon after, they moved into an apartment along with L.V. and her older sister N.V. N.V. is four years older than L.V.

L.V.'s mother worked as a nursing home caregiver for 12 hours each day starting at 7 a.m. Perez frequently picked up L.V. and her sister from school and cared for them until their mother got home. In March 2015, Perez, L.V.'s mother, and the three children moved into Perez's mother's house. Perez and L.V.'s mother were struggling financially and beginning to have problems in their relationship.

L.V.'s mother testified that Perez was a tough disciplinarian. While they were living with Perez's mother, L.V.'s mother noticed changes in L.V.'s demeanor. L.V. also had difficulty sleeping. In July 2016, L.V.'s mother and Perez broke up. L.V.'s mother and her three children moved out.

L.V.'s aunt, Imelda Salgado, testified that in September or October 2016, L.V. disclosed to her that she had been sexually abused by Perez. At the time of the outcry, they were in Salgado's kitchen. L.V. was nervous and scared. L.V. told Salgado that when she lived in Perez's mother's house, Perez told her to sit down. Perez pulled down his pants and put "his part" in her mouth. Perez then "peed" in her mouth and told her to swallow. Salgado was shocked but unsure how to handle the situation. She did not tell anyone what L.V. had told her.

Later in October 2016, L.V. told a teacher at school about the sexual abuse. The school reported it to the Department of Family and Protective Services who initiated an investigation. The Department notified L.V.'s mother and contacted the police department. The investigating officer testified at trial that she interviewed all the relevant parties and reviewed the records from L.V.'s sexual assault examination. At the conclusion of her investigation, the officer sought an arrest warrant for Perez.

L.V. testified at trial. She identified Perez in the courtroom as the person who had sexually abused her. She testified that when she was about five years old, she and her siblings lived with Perez at his mother's house. She described the rooms and bathrooms in the house. She described which family member slept in each bedroom.

3

L.V. testified that once when she was playing outside with her sister, she needed to go inside to the bathroom. Perez came with her and pushed and hit her with his hands. He told her that if she told anyone, he would hurt her.

On another occasion, she was home because she was sick, and Perez watched her while her mother was at work. They were watching a movie in his room when she said that she needed to use the restroom. Perez told her to get her little brother's shirt and use it to cover her eyes. L.V. crawled on the floor to get the shirt. She then returned with the shirt and was on her knees next to the bed. Perez pulled down his pants and put his "private part" in L.V.'s mouth. He told her not to bite him. L.V. testified that Perez moved himself back and forth. After he "peed" in her mouth and told her to swallow, he took his private part out of her mouth. L.V. testified that she was scared. L.V. testified that she told her sister about the sexual abuse on the day that it happened. She told her sister to keep it a secret so that their mother would not get hurt. Later, she told her aunt and her kindergarten teacher.

L.V. also recounted that on one occasion, Perez came in her room while she was asleep, took her thumb out of her mouth, and bit it. She stated that he was upset with her for sucking her thumb.

L.V.'s older sister N.V. testified that living with Perez was "horrible" and that he treated L.V. poorly. She described the rooms and bathrooms of Perez's

4

mother's house. She testified that she did not tell anyone what L.V. had told her about Perez because N.V. did not think she would be believed.

A clinical psychologist from the Children's Assessment Center testified as an expert. She described that often child victims are groomed by their abuser, and that can involve gift-giving and attention or threats and coercion. She described that children may delay their outcry of abuse and may partially disclose to some people before giving a full disclosure of what has happened to them.

A nurse who specializes in sexual assault examinations testified about L.V.'s sexual assault examination. She stated that the purpose of the exam is diagnosis, treatment, and safety of the patient. As part of the exam, she collects a medical history. She testified that this is the most important part because it dictates the terms of the physical exam and the treatment plan that is created. The medical report from L.V.'s exam was admitted into evidence, and the nurse reviewed the report for the jury. The report included that L.V. said that Perez took out his "tee-tee" and put it in her mouth while her brother's shirt was tied around her head. She testified that pee came out, and Perez made her drink it. During her medical exam, L.V. also said that Perez sometimes punches her and pulls her ears. The nurse described the limited physical examination that she was able to complete before L.V. was uncomfortable. The nurse did not see signs of physical trauma, but that lack of physical trauma was not indicative of whether there had been sexual abuse.

Perez's mother testified for the defense. She testified that she first rented an apartment for L.V.'s mother and Perez. Eventually, due to relationship and financial issues, the couple, their infant son, L.V., and N.V. moved in with Perez's mother. Perez's mother testified that when the couple broke up and L.V.'s mother moved out with the children, L.V.'s mother would not tell her where she lived. She described that Perez was not faithful to L.V.'s mother and had another girlfriend. She heard Perez and L.V.'s mother fighting over Perez's infidelity. When the couple broke up, they had a custody agreement regarding the son they shared. Perez had parenting time with the son on weekends. She testified that once L.V. disclosed abuse, L.V.'s mother sought to change the visitation plan.

The jury found Perez guilty of sexual assault of a child younger than 6 years old. The trial court assessed his punishment at 34 years' imprisonment.

## Reliability of Outcry Testimony

In his first issue, Perez contends that the trial court erred in admitting Salgado's outcry testimony because L.V.'s outcry statement to Salgado was unreliable. He argues that L.V.'s outcry lacked specificity as to when the sexual abuse occurred and that the State did not present corroborating evidence to support her allegations.

## A.    Standard of Review and Applicable Law

The Texas Code of Criminal Procedure allows admission of certain hearsay testimony in the prosecution of sexual offenses against minors. TEX. CODE CRIM. PROC. art. 38.072. The statute allows the designation of an outcry witness to testify about a child's disclosure of abuse but requires that the outcry witness be the "first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." *Id.* § 2(a)(3). To qualify, the disclosure must include more than a "general allusion that something in the area of child abuse was going on." *Buentello v. State*, 512 S.W.3d 508, 517 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (quoting *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)).

Before an outcry witness may testify about the child's disclosure, the trial court must find, "in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(2). "The phrase 'time content and circumstances' refers to 'the time the child's statement was made to the outcry witness, the content of the child's statement, and the circumstances surrounding the making of that statement.'" *Buentello*, 512 S.W.3d at 517–18 (quoting *Broderick v. State*, 89 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (internal citation omitted)). The trial court's focus is whether the

7

child's outcry statement is reliable, not whether the outcry witness is credible. *Sanchez v. State*, 364 S.W.3d 476, 487–88 (Tex. Crim. App. 2011). The trial court considers the circumstances of the outcry, not the abuse itself. *Id.* at 487. Outcry reliability is determined on a case-by-case basis. *Buentello*, 512 S.W.3d at 518.

A trial court has broad discretion in admitting outcry witness testimony. *Id.* at 516 (quoting *Garcia*, 792 S.W.2d at 92). We will not reverse the trial court's decision to admit outcry witness testimony unless it falls outside the zone of reasonable disagreement. *Id.* at 516–17.

## B.    Analysis

Perez contends that L.V.'s outcry statement was not reliable because it was not corroborated by other evidence and because L.V. did not tell Salgado specifically when she was abused.

Appellate courts have enumerated eleven "indicia of reliability" that a trial court may consider in determining the reliability of a child's outcry. *Buentello*, 512 S.W.3d at 518 & n.4 (listing the criteria and citing *Buckley v. State*, 758 S.W.2d 339, 343–44 (Tex. App.—Texarkana 1988), *aff'd on other grounds*, 786 S.W.2d 357 (Tex. Crim. App. 1990)). Although courts have enumerated factors that may assist in ascertaining the reliability of an outcry statement, the focus of the inquiry must remain upon the outcry statement, not the abuse itself. *Broderick*, 89 S.W.3d at 699 (explaining that court must ascertain reliability considering circumstances of

statement, not circumstances of abuse). A court may find a child's outcry reliable even if the statement is vague or contains inconsistent details about the alleged sexual abuse. *Id.*

The trial court did not abuse its discretion in determining that the content and circumstances of L.V.'s disclosure to Salgado supported a conclusion of reliability. L.V. described the act in a discernible way that was more than a general allusion to sexual abuse. She also described a sexual encounter that is beyond the common understanding of a child her age. She vividly described Perez pulling down his pants, penetrating her mouth with "his part," "peeing" in her mouth, and commanding her to swallow. While L.V. stated that the abuse happened while she was living with Perez, L.V. was not required to tell Salgado a concrete date or time of the abuse for her outcry to be reliable. *Broderick*, 89 S.W.3d at 699 (outcry statement may be reliable even when vague and inconsistent statements about details of abuse); *see also MacGilfrey v. State*, 52 S.W.3d 918, 921 (Tex. App.— Beaumont 2001, no pet.) (stating child not required to give date or time of abuse for outcry statement to be reliable). The State was not required to present any other witness or physical evidence to corroborate L.V.'s outcry statement. *Buentello*, 512 S.W.3d at 519 ("[N]either corroboration nor physical evidence is required for an outcry to be determined to be reliable."). We conclude that the trial court did not abuse its discretion in finding L.V.'s outcry to Salgado reliable.

We overrule Perez's first issue.

## Admission of Medical Report

In his second issue, Perez asserts that the trial court erred by denying his hearsay objections to portions of the medical report from L.V.'s sexual assault examination. He argues that the complained-of portions, where L.V. identified Perez as the person who sexually abused her and described acts of physical abuse, were inadmissible hearsay.

### A.    Standard of Review

An appellate court reviews a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Munoz v. State*, 288 S.W.3d 55, 57 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003)). An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *Id.*

Hearsay—a statement, other than one made by the declarant while testifying at trial or a hearing, offered in evidence to prove the truth of the matter asserted— is generally inadmissible at trial. TEX. R. EVID. 801(d), 802. The Texas Rules of Evidence make an exception to the hearsay rule and allow that "[s]tatements made

for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception nor general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible. TEX. R. EVID. 803(4). This exception has been interpreted to include statements by suspected victims of child abuse as to the source of their injuries. *See Burns v. State*, 122 S.W.3d 434, 438 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

**B.    Relevant Facts**

During a hearing outside the jury's presence, the State proffered the medical report from L.V.'s sexual assault examination. The report contained a section titled "Additional History." In this section, the sexual assault nurse examiner ("SANE nurse") recorded L.V.'s responses to several questions about the sexual abuse she experienced and her interactions with Perez.

Perez objected that certain portions of L.V.'s responses were inadmissible hearsay, namely the statement where L.V. identified Perez as her abuser and expressed that he punched her "lots of times" and "pulled [her] ears." He argued that the statement identifying him was not made for the purpose of medical diagnosis or treatment for sexual abuse and that these were extraneous domestic violence offenses. The trial court sustained the objections in part, excluding certain

11

specific details of the physical abuse.[*] The redacted medical report, including L.V.'s identification of Perez as the abuser and details of physical abuse, was admitted at trial.

At trial, the SANE nurse testified that the purpose of the sexual assault exam is "diagnosis, treatment, and safety of the patient." She stated that collecting medical history and questions posed in the "Additional History" section of the report is "more important than any other . . . part of the exam" because it "dictates what you're going to do in terms of your physical exam . . . and the treatment plan that you're going to make."

## C.    Analysis

Perez asserts that the identity of L.V.'s abuser and the details of physical abuse were not made for the purpose of medical diagnosis and treatment and were not admissible at trial. We disagree. First, the SANE nurse expressly testified that the examination, including questions regarding additional history, were completed for the purposes of medical diagnosis and treatment. TEX. R. EVID. 803(4). The identity of the abuser, as well as the full extent and nature of the abuse L.V. recounted was critical to the nurse's ability to conduct a thorough, relevant medical evaluation and to develop a treatment plan for L.V. *See Bargas v. State*, 252

---

[*]    The report included that L.V. identified her stepfather as her abuser and said he punched her and pulled her ears on many occasions. The trial court excluded details in the report such as "makes a fist and imitates punch to her face" and "tugs on her earrings." The redacted report was admitted into evidence.

S.W.3d 876, 896 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Because treatment of child abuse includes removing a child from an abusive setting, the identity of the abuser is pertinent to the medical treatment of the child."); *see also Hood v. State*, Nos. 05-20-00902-CR, 2022 WL 2071111, at *5 (Tex. App.—Dallas June 9, 2022, no pet.) (mem. op., not designated for publication) ("[T]he identity of an offender falls within the ambit of the hearsay exception governing statements made for medical diagnosis or treatment because it is relevant to treatment, particularly in incest and family violence cases, insofar as it presents an environmental and safety issue that could frustrate diagnosis and treatment."). The trial court did not abuse its discretion in admitting the complained-of portions of the medical report under rule 803(4). We overrule Perez's second issue.

## Denial of Motion for Mistrial

In his third issue, Perez contends that the trial court erroneously denied his motion for mistrial made after a Houston Police Department officer made an unsolicited comment at trial that she attempted to schedule a polygraph examination during her investigation of the case.

The State asked a Houston Police Department officer what her next steps were after speaking with witnesses. She responded, "Well the next steps after speaking to every person, I also tried to schedule a polygraph exam." She was cut off by Perez's attorney's objection. After a hearing outside the presence of the jury,

the trial court instructed the jury to disregard the statement made by the witness.

The court gave the following instruction:

> Ladies and gentlemen, I have an instruction that I'm about to give you. You are to disregard the last statement made by this witness and not consider it for any purpose. Results from a polygraph examination have been found to be completely unreliable, and are, therefore, not permitted as evidence in a trial proceeding. In this case, there was no polygraph examination conducted. You are, therefore, instructed not to consider for any purpose the statement made by this witness referencing an attempt to schedule a polygraph examination. You will base your verdict on the evidence presented in this courtroom only.

A mistrial is required only when the impropriety is "clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Martines v. State*, 371 S.W.3d 232, 250 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). We review the trial court's refusal to grant a mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). When a polygraph is mentioned at trial and defense counsel requests a mistrial, we must first determine whether the results were revealed to the jury. *Martines*, 371 S.W.3d at 250. Generally, when polygraph results are mentioned but not revealed to the jury, an instruction to disregard is sufficient to cure any error. *Id.* at 251. In determining whether the trial court erroneously refused to grant a mistrial, we may also consider (1) whether the questioning party exhibited bad faith by asking a question designed to elicit

14

polygraph evidence; and (2) whether polygraph evidence bolstered the State's case. *Id.*

"Numerous cases have held that where a witness gives a nonresponsive answer that mentions a polygraph test was offered or taken but does not mention the results of such a test, there is no error in failing to grant a mistrial." *Kugler v. State*, 902 S.W.2d 594, 595 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). Here, although the jury heard the officer "tried to schedule" a polygraph exam, there was no indication that Perez refused to take the examination, nor was there any evidence that he took a polygraph. No polygraph results were revealed to the jury. The record does not reflect that the prosecutor deliberately or intentionally elicited the testimony regarding the polygraph. Once the officer mentioned it, the trial court promptly informed the jury that polygraph evidence was inadmissible and instructed the jury to disregard. The trial court also told the jury that there was no polygraph examination conducted. The trial court did not belabor the issue or call undue attention to the reference. We conclude that the trial court's instruction to the jury to disregard the testimony sufficiently cured any error arising from the reference to a polygraph examination. We therefore hold that the trial court did not abuse its discretion in denying Perez's motion for mistrial.

We overrule Perez's third issue.

## Impeachment Evidence

In his final issue, Perez argues that the trial court abused its discretion by excluding impeachment evidence, including specific threats L.V.'s mother allegedly made. Perez's defensive theory was that L.V.'s mother harbored ill will against him because of his infidelity. He asserted that her bias led her to coach or manipulate L.V. to fabricate sexual abuse allegations. To support his theory, he sought to call his own mother to testify that L.V.'s mother threatened Perez that he would never see their son again and that he would "pay for what he did to her." In a hearing outside the jury's presence, the trial court ruled that Perez could not ask his mother about specific threats or statements that she heard L.V.'s mother make. The trial court ruled that Perez could establish a change in circumstances and the facts of the family law case between him and L.V.'s mother through testimony by his own mother.

Assuming without deciding that Perez's mother's testimony as to L.V.'s mother's threats was admissible, the trial court's error in excluding them was harmless and did not affect Perez's substantial rights. Errors in the admission of evidence are non-constitutional and subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007); TEX. R. APP. P. 44.2(b) (providing that any non-constitutional error that does not affect substantial rights must be disregarded).

The record reflects that Perez's mother's proposed testimony would have only incrementally furthered Perez's defensive theory. Perez elicited testimony from his mother that L.V.'s mother was biased against him. Perez's mother testified that within a couple of months of moving in with her, L.V.'s mother and Perez had multiple issues with their relationship. She testified that she believed the problems started before the couple moved in with her. She described that Perez and L.V.'s mother broke up because Perez had another girlfriend. She testified that Perez's infidelity was ongoing. She testified that L.V. and her mother moved out just a few months before L.V.'s outcry of sexual abuse. Perez also elicited testimony from his mother that L.V.'s mother changed the custody arrangements for their son after L.V.'s outcry, which restricted Perez's access to the boy.

Perez also cross-examined L.V.'s mother regarding her relationship with him and their breakup, the fact that they had arguments and relationship problems, and whether he had been unfaithful. L.V.'s mother denied knowing that he had been unfaithful to her and asserted that she did not try to restrict Perez's access to his son but instead tried to protect her son after Perez was arrested for sexually abusing L.V.

Accordingly, considering the entirety of the record, the trial court's ruling limiting Perez's mother's testimony did not affect Perez's substantial rights.

We overrule Perez's fourth issue.

17

## Conclusion

We affirm the judgment of the trial court.

Peter Kelly
Justice

Panel consists of Justices Kelly, Countiss, and Rivas-Molloy.

Publish.  TEX. R. APP. P. 47.2(b).