Opinion issued March 20, 2014



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00912-CV

_____

## IN THE MATTER OF H.L.A., a Child

---

**On Appeal from the County Court at Law No. 2**
**Galveston County, Texas**
**Trial Court Case No. 11JV0116**

---

## MEMORANDUM OPINION

The State alleged by petition that Appellant H.L.A. engaged in delinquent conduct, namely sexual assault and unlawful restraint of the complainant, H.V. The State dismissed the sexual assault charges during the charge conference and a jury adjudged H.L.A. delinquent on the unlawful restraint charge. The Disposition Order placed H.L.A. in the custody of his parents and required him to participate in

three to twelve months of an intensive services program and, following completion of the services program, twelve months of probation. In four issues, H.L.A. challenges his adjudication. We affirm.

**Background**

H.V., a fifteen year-old male described by his mother as having "high functioning" autism, went to his next door neighbor's house to play with H.L.A., a thirteen year-old male. H.V. testified at trial that he and H.L.A. were playing video games in H.L.A.'s room when H.L.A. locked the door. When H.V. had to use the restroom, he pulled his penis out of his pants in front of H.L.A., H.L.A. punched H.V., and H.V. put his penis back in his pants.

H.V. testified that he pulled down his pants a second time and laid down on the bed because H.L.A. told him that H.L.A. was going to massage school and was going to give him a massage. H.V. testified that H.L.A. then put a condom on himself and one on H.V., and put his penis in H.V.'s anus. H.L.A. tried to force H.V. to put his penis in H.L.A's anus, but H.V. did not, so H.L.A. put his penis in H.V.'s anus a second time.

H.V. testified that he tried to get out of H.L.A.'s room but H.L.A. prevented him from leaving. Twice, H.V. tried to get up, but H.L.A. held him down and punched him. Specifically, H.V. testified that H.L.A. held H.V.'s arm down both when he was on his stomach and when he was on his back. H.V. testified that

2

when H.L.A. was penetrating him, H.V. told H.L.A., "no," and "stop," and screamed, but H.L.A. told him to be quiet. H.V. also testified that H.L.A. told him not to tell his family or mom.

After the incident, H.V. did not immediately leave H.L.A.'s house. He testified that he asked H.L.A.'s mother if he could stay longer and that he did not tell H.L.A.'s mother about the incident. H.V. left after H.L.A.'s mother told him to go home. On cross-examination, H.V. testified that he was mad because he had to leave H.L.A.'s house, that he was curious about sex, and that he did not know what the term "forced" meant.

When H.V. left the house, he sat alone on the curb in front of H.L.A.'s house to think about what had happened. H.V. testified that when he went inside his house, he told his father about the incident because he was mad and did not understand what had happened. H.V.'s parents confronted H.L.A and his mother and then called their pastor and the police. H.V.'s father testified that H.L.A. came to his house and "begged" him not to call the police.

The next day, H.V. had a sexual assault examination. Leanne LeDoux, the sexual assault nurse examiner ("SANE"), testified at trial based on her notes from the sexual assault examination forensic report, and the report was admitted. The report stated that H.V. told LeDoux that H.L.A. "went in his room and locked the door," "stuck his pee-pee in my butt," and "punched me in the chest." The trial

3

court also admitted medical records that stated H.V. "was invited by 13 year old neighbor yesterday afternoon to neighbor's home to play PlayStation when neighbor locked door and forced himself on patient in which he pushed patient down and struck patient in the chest with fist . . . [and] there was rectal penetration . . ."

The State also offered the testimony of H.V.'s counselor, Jan Bailey, who counseled H.V. for post-traumatic stress disorder. She testified that H.V. reported that H.L.A. stuck his penis in H.V.'s anus two times, punched H.V. in the stomach to get him to lay down, and that H.L.A. was going to massage school. Bailey also testified that H.V. was afraid of H.L.A. and that H.L.A. told H.V. not to tell or he would be hurt.

**Discussion**

In four issues, H.L.A. challenges the sufficiency of the evidence and contends that the trial court abused its discretion in admitting Bailey's hearsay testimony and denying his motion for new trial.

**A. Sufficiency of the Evidence**

In his second and third issues, H.L.A. challenges the sufficiency of the evidence to support the jury's finding that the incident occurred without the consent of H.V.[1]

**1. Standard of Review**

When evaluating a challenge to the legal or factual sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (holding that the *Jackson v. Virginia* legal-sufficiency standard is only standard reviewing court should apply in determining sufficiency of evidence in criminal case). The standard is the same for both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).

We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We therefore

---

[1] H.L.A. framed his third issue as a challenge to the jury's rejection of his affirmative defense of consent. But no affirmative defense was submitted to the jury. Accordingly, we construe both issues as challenges to the jury's finding that the incident occurred without H.V.'s consent.

resolve any inconsistencies in the evidence in favor of the verdict, *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991) (en banc), and "defer to the jury's credibility and weight determinations." *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

## 2.     Applicable Law

A person commits the offense of unlawful restraint when he "intentionally or knowingly restrains another person." TEX. PENAL CODE ANN. § 20.02(a) (West 2011). In this context, "restrain" means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1) (West 2011). Restraint is without consent if it is accomplished by "force, intimidation, or deception." *Id.* § 20.01(1)(A).

## 3.     Analysis

In his second and third issues, H.L.A. contends that there was insufficient evidence that he restrained H.V. "without consent." In support, H.L.A. points out that there was evidence that (1) H.V. was curious about sex and initially exposed himself to H.L.A., (2) H.V. did not want to leave H.L.A.'s house after the incident, (3) H.V. did not know what the term "forced" meant, and (4) H.V.'s father coached H.V. to say that he had been forced to stay in H.L.A.'s room.

We conclude that the State adduced evidence sufficient to support the adjudication. First, H.V. testified that H.L.A. locked his bedroom door and later forced H.V. to remain on the bed and prevented H.V. from leaving. H.V. testified that H.L.A. held him down with his arm—once while H.V. was on his stomach and once while he was on his back, and that he tried to get up twice, but H.L.A. punched him. H.V. also testified that he told H.L.A. to stop and screamed, but H.L.A. told him to be quiet. Second, the SANE testified that H.V. told her that H.L.A. "went in his room and locked the door," and "punched me in the chest." Third, H.L.A.'s conduct after the incident evidences a consciousness of guilt. H.V. testified that H.L.A. told him not to tell his family about the incident, and H.V.'s father testified that H.L.A. begged him not to call the police after he confronted H.L.A. and his mother.

H.L.A. contends the evidence is insufficient because there was evidence that H.V. exposed his penis first, was curious about sex, did not immediately leave, did not know the meaning of "forced," and was coached by his father. According to H.L.A., this evidence demonstrates that the incident was consensual. But these were factors for the jury to consider in weighing the evidence, and we defer to the jury's resolution of these issues. *See Henson v. State*, 388 S.W.3d 762, 773 (Tex. App.—Houston [1st Dist.] 2012) (stating that "verdict of guilty is an implicit

7

finding rejecting the defendant's [defensive] theory"), *aff'd*, 407 S.W.3d 764 (Tex. Crim. App. 2013).

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational juror could have found beyond a reasonable doubt that H.L.A. committed the offense of unlawful restraint. *See West v. State*, 406 S.W.3d 748, 757–58 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (evidence of restraint held sufficient where defendant repeatedly grabbed victim by the hand and arm, pinned her down by her wrists during intercourse, and placed her in his car); *Megas v. State*, 68 S.W.3d 234, 239 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (evidence of restraint held sufficient where defendant kicked victim to prevent her from leaving vehicle, prevented her from running away, and dragged her back into vehicle); *Torres v. State*, 794 S.W.2d 596, 598–99 (Tex. App.—Austin 1990, no pet.) (calling wife to ask her to drop charges and threatening her if she did not was evidence of consciousness of guilt in sexual assault of child case). Accordingly, we hold the evidence was legally sufficient to support the judgment and overrule H.L.A.'s second and third issues.

## B.    Admissibility of Jan Bailey's Testimony

### 1.    Standard of Review and Applicable Law

We review the trial court's ruling on admissibility of evidence for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000);

*Hernandez v. State*, 327 S.W.3d 200, 205 (Tex. App.—San Antonio 2010, pet. ref'd). We "must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Weatherred*, 15 S.W.3d at 542 (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)).

Hearsay—a statement, other than one made by the declarant while testifying at trial or a hearing, offered in evidence to prove the truth of the matter asserted—is generally inadmissible at trial. TEX. R. EVID. 801(d), 802. However, "[s]tatements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible as an exception to the hearsay rule. TEX. R. EVID. 803(4).

Rule 803(4) is premised on the declarant's desire to receive an appropriate medical diagnosis or treatment, and the assumption that the declarant appreciates that the effectiveness of the diagnosis or treatment may depend on the accuracy of the information provided. *See Burns v. State*, 122 S.W.3d 434, 438 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). "Thus, the declarant's motive in making the statement must be consistent with the purpose of promoting treatment." *Austin v. State*, 222 S.W.3d 801, 811 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). The witness, however, need not expressly state that the hearsay declarant

recognized the need to be truthful in her statements for the medical treatment exception to apply. *Munoz v. State*, 288 S.W.3d 55, 58 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd)). Instead, the reviewing court must determine whether the record supports a conclusion that the declarant understood the importance of honesty in the context of medical diagnosis and treatment. *See Beheler v. State*, 3 S.W.3d 182, 188–89 (Tex. App.—Fort Worth 1999, pet. ref'd).

"The essential 'qualification' expressed in the rule is that the declarant believe that the information he conveys will ultimately be utilized in diagnosis or treatment of a condition from which the declarant is suffering, so that his selfish motive for truthfulness can be trusted." *Taylor v. State*, 268 S.W.3d 571, 587 (Tex. Crim. App. 2008). We conduct a two-part test for determining whether this requirement has been met. First, the statement must be made for the purpose of diagnosis or treatment, and the declarant must know that it is made for the purpose of diagnosis and treatment. *Id.* at 588–89. Second, the statements must actually be pertinent to diagnosis or treatment. *Id.* at 591.

The first prong requires that the proponent of the evidence show that the out-of-court declarant was aware both that the statements were made for the purpose of medical diagnosis or treatment and that a proper diagnosis or treatment depended on the truth of such statements. *Id.* at 589. In the context of statements made by a

child to a therapist, "it is incumbent upon the proponent of the hearsay exception to make the record reflect both (1) that truth-telling was a vital component of the particular course of therapy or treatment involved, and (2) that it is readily apparent that the child-declarant was aware that this was the case." *Id.* at 590.

## 2. Analysis

In his fourth issue, H.L.A. contends that the trial court abused its discretion by admitting Bailey's testimony because it was hearsay and did not fall under the medical diagnosis exception.[2] Specifically, H.L.A. contends the State failed to show that H.V. understood the importance of honesty in his counseling.

The prosecutor asked Bailey four relevant questions:

State: Now, during your initial interview with [H.V.], did you explain to him—what the importance of being truthful in talking to you?

Bailey: Yes.

State: And why is being truthful so important prior to diagnosis?

Bailey: It's the basis of the therapeutic relationship.

State: Now, when you told him that it was important that he was truthful, did he understand?

Bailey: Yes, I believe he did.

---

[2] Bailey testified that she counseled H.L.A. for post-traumatic stress disorder and that H.V. told her H.L.A. stuck his penis in H.V.'s anus two times and punched H.V. in the stomach to get him to lay down, that H.L.A. was going to massage school, and that H.L.A. told him not to tell or that he would be hurt.

11

State: Is that something you covered only in the initial interview or something you covered throughout the sessions?

Bailey: Throughout the sessions.

Based on this record, we conclude that the State met its burden to make the record reflect that truth-telling was a vital component of H.V.'s counseling and that H.V. was aware that this was the case. *See Munoz*, 288 S.W.3d at 59 (holding that child victim of sexual assault understood she had to be truthful during therapy sessions because therapist affirmatively answered, "That is correct," when the prosecutor asked "during your initial interview with [the victim], did you explain . . . the importance of being truthful in talking to you?"). Because H.L.A. does not contend that Bailey's testimony otherwise failed to meet the elements of Rule 803(4), we conclude that the trial court did not abuse its discretion by admitting Bailey's testimony under the exception for statements made for the purpose of medical diagnosis or treatment. Accordingly, we overrule H.L.A.'s fourth issue.

## C. Motion for New Trial

### 1. Standard of Review

A trial court must grant a new trial if the verdict is contrary to the law and the evidence. TEX. R. APP. P. 21.3(h). We review a trial court's ruling on a motion for new trial using an abuse-of-discretion standard. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it was within the zone

of reasonable disagreement. *Id.* "We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable." *Id.* "Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling." *Id.*

## 2. Analysis

In his first issue, H.L.A. contends that the trial court abused its discretion in denying his motion for new trial because the verdict was contrary to the law. *See* TEX. R. APP. P. 21.3(h). H.L.A. was adjudged delinquent for "intentionally or knowingly restrain[ing] another person," which required him to register as a sex offender.[3] *See* TEX. PENAL CODE ANN. § 20.02(a); TEX. CODE CRIM. PROC. ANN. art. 62.001(5)(E)(ii) (West Supp. 2013) ("'reportable conviction or adjudication' [for purposes of sex offender registration program] means . . . adjudication of delinquent conduct or a deferred adjudication . . . based on . . . a violation of Section 20.02 (Unlawful restraint) . . . if . . . the victim was younger than 17 years of age"). Citing *In re B.W.*, 313 S.W.3d 818, 820 (Tex. 2010), H.L.A. argues that because he is a minor, he lacked the experience and mental capacity to appreciate that his conduct would require him to register as a sex offender and, therefore, "he cannot be said to have intentionally or knowingly restrained another person."

---

[3] The trial court ordered H.L.A.'s sex offender registration deferred.

*In re B.W.* held that a minor under fourteen could not be adjudicated delinquent for prostitution because she could not legally consent to sex. *Id.* at 824. The "underlying rationale [for the rule that an underage child cannot legally consent to sex] is that younger children lack the capacity to appreciate the significance or the consequences of agreeing to sex, and thus cannot give meaningful consent." *Id.* at 820. But, in that case, the act to which the minor could not consent was an element of the offense. *See* TEX. PENAL CODE ANN. § 43.02(a)(1) (West Supp. 2013) (person commits prostitution if the person "knowingly offers to engage, agrees to engage, or engages in sexual conduct for a fee").

The same is not true in this case. Here, the State was required to prove only the elements of unlawful restraint, which, as discussed above, do not require proof that H.L.A. engaged or offered or agreed to engage in sexual conduct. While H.L.A. may have been unaware that registration as a sex offender would be a collateral consequence of his adjudication, *see Anderson v. State*, 182 S.W.3d 914, 917 (Tex. Crim. App. 2006) (en banc) (stating that sex offender registration is a collateral consequence of a conviction), unlike in *In re B.W.*, H.L.A.'s age and inability to comprehend that collateral consequence did not prevent the State from proving the elements of the charged offense. Accordingly, we hold that the verdict

14

was not contrary to law and that the trial court did not abuse its discretion in denying H.L.A.'s motion for new trial.

We overrule H.L.A.'s first issue.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.