**Opinion issued February 21, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00446-CR

———————————

## LARRY CHARLES JOHNSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 371st District Court**
**Tarrant County, Texas***
**Trial Court Case No. 1504047D**

---

\*     The Texas Supreme Court transferred this appeal from the Court of Appeals for the Second District of Texas. Misc. Docket No. 18-9049 (Tex. March 27, 2018); *see* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any conflict between the precedent of the Court of Appeals for the Second District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

## MEMORANDUM OPINION

A jury convicted appellant Larry Charles Johnson of the third-degree felony offense of injury to a child, and it assessed punishment at nine years in prison and a fine of $1,000. *See* TEX. PENAL CODE § 22.04. On appeal, Johnson argues that the trial court reversibly erred by admitting hearsay testimony of two witnesses. Because we find no reversible error in the challenged evidentiary rulings, we affirm.

## Background

Alyssa Whitley is the mother of L.J. and M.W., the complainant. Larry Charles Johnson is the father of L.J. but not M.W. Whitley and Johnson are not married to each other.

Whitley and her children were at a friend's apartment when Johnson arrived to pick up L.J. for a visit with relatives in Houston. Whitley and Johnson argued outside the apartment. Whitley was holding then four-month-old M.W. when the argument became physical. Johnson hit and punched Whitley and hit M.W. on the right side of his face near his cheekbone.

Whitley's friend, Aujzhane Griffin, heard yelling and came outside. Whitley was crying, and, according to Griffin, she "was screaming, she was yelling, she was mad, she was hitting things, she was just yelling, screaming. She was hitting everything." Griffin took the baby from Whitley, who then repeatedly punched

Griffin's car, which was parked nearby. When asked if Whitley was "enraged at the time," Griffin responded: "Yeah. She was definitely mad." Whitley told Griffin that Johnson hit her and M.W. Whitley's nose was bleeding, and the baby's cheek later swelled. Johnson left before the police arrived.

City of Fort Worth Police Officer R. Mask responded to the 911 call for a domestic disturbance. Officer Mask testified that he arrived about ten minutes after the call was received, and he found Whitley outside holding M.W. Officer Mask testified that Whitley was upset: "She was crying, she was agitated, she seemed angry." Office Mask observed that Whitley had a swollen and cut lip, and the baby had swelling on the right side of his face. Whitley told him that Johnson had come over to pick up L.J. for a family visit, and they had argued. She also told Officer Mask that Johnson hit her and M.W. Johnson objected to Officer Mask's testimony about what Whitley told him on the basis of hearsay, arguing that so much time passed between the incident and the statement that it could not have been an excited utterance. The trial court overruled the objection.

M.W. was taken to Cook Children's Medical Center, where Rachel Weatherington, a hospital social worker, spoke with Whitley in the triage area of the emergency department, before the physician saw the baby. Weatherington, who was wearing scrubs and an employee identification badge, introduced herself as a social worker and explained that her role was to assess the situation to determine

3

what needed to be done. Weatherington saw "a red mark on the right side" of M.W.'s face, and "it was a little bit swollen." She recalled that Whitley was concerned about M.W. and protective of him. Whitley was crying, and she told Weatherington about the incident that brought them to the hospital. Johnson objected to Weatherington's testimony about what Whitley told her on the basis of hearsay, arguing that the statements were not made for the purpose of medical diagnosis or treatment. The trial court overruled the objection, and Weatherington testified that Whitley told her Johnson had struck M.W.

Dr. Tomas Murillo, an emergency department pediatrician, cared for M.W. He explained that he obtains a patient history, for the purpose of making a medical diagnosis, from the primary caretaker and from the triage nurse. Dr. Murillo testified without objection that Whitley told him M.W. was struck by Johnson. Upon examination of M.W., Dr. Murillo noticed "swelling to the right side of his head" near the "temporal area." He said this was consistent with the patient history given by Whitley that M.W. had been "struck on the right side." Dr. Murillo observed swelling in the child's scalp area that was consistent with a punch from an adult man. He testified that the injuries would have caused M.W. pain and that the child flinched from his touch during the examination.

Dr. Murillo ordered a head scan due to his concern about a skull fracture. He said: "[A] four-month-old can't really take a hit from an adult because their bones

are very susceptible to injury." The scan ruled out a fractured skull or internal bleeding.

Whitley did not testify at trial. But before the first witness testified and without objection from Johnson, the State played a recording of the 911 call Whitley made just after the incident. In it, Whitley is heard crying and at times struggling to speak through her cries. Whitley told the operator that Johnson hit her baby.

The jury convicted Johnson of injury to a child, and it assessed punishment at nine years in prison and a fine of $1,000. Johnson appealed.

## Analysis

In two issues, Johnson challenges the admission of testimony from Officer Mask and from Weatherington on the basis that each witness's testimony was hearsay. He argues that Whitley's statements to Officer Mask were not an excited utterance because too much time had passed between the event and her statements. He also argues that Whitley's statements to Weatherington were not made for the purpose of medical diagnosis or treatment.

Whether a court properly admitted evidence under an exception to the hearsay rule is reviewed under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Munoz v. State*, 288 S.W.3d 55, 57 (Tex. App.—Houston [1st Dist.] 2009, no pet.). A trial judge abuses his or her discretion

5

by acting arbitrarily, unreasonably, without reference to any guiding rules or principles, *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990), or by making a decision that is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016) (quoting *Taylor v. State*, 268 W.W.3d 571, 579 (Tex. Crim. App. 2008)). We will uphold a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801(d)(2); *see Ellis v. State*, 517 S.W.3d 922, 930 (Tex. App.—Fort Worth 2017, no pet.). Hearsay is generally inadmissible, except as provided by statute or rule. TEX. R. EVID. 802; *see* TEX. R. EVID. 803, 804 (exceptions to the rule against hearsay). The trial court, as gatekeeper, resolves any preliminary question related to the applicability of an exception to the hearsay rule. *See* TEX. R. EVID. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege."); *Coble v. State*, 330 S.W.3d 253, 294 (Tex. Crim. App. 2010). The court may consider the statement itself in resolving the question of admissibility. *Coble*, 330 S.W.3d at 294.

## I. Whitley's statement to Officer Mask was an excited utterance.

The State offered Officer Mask's testimony that Whitley told him Johnson hit M.W. as an excited utterance. An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused," and it is an exception to the rule against hearsay. TEX. R. EVID. 803(2). The rationale for the excited utterance exception is that when a person is "in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for *reflection* necessary to the fabrication of a falsehood." *Zuliani*, 97 S.W.3d at 595 (quoting *Evans v. State*, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972)).

When determining whether the excited utterance exception applies, the "critical determination is 'whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event' or condition at the time of the statement." *Id.* (quoting *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)). Among other things, the court may consider the elapsed time between the event and the statement and whether the statement was a response to a question. *Id.* The "specific type of emotion" that dominates the declarant is not relevant, so long as "the declarant was still dominated by emotion caused by the startling event when she spoke." *Coble*, 330 S.W.3d at 294.

7

Officer Mask was the first witness to testify at trial. He testified that Whitley was "crying," "upset," "agitated," and "she seemed angry" when he arrived on the scene and spoke to her. He agreed that it was "clearly" an incident "that had recently happened." This evidence shows that Whitley was still dominated by emotions caused by the assault on her and her infant, and it supports the trial court's admission of Whitley's statements to Officer Mask under the excited utterance exception to the hearsay rule.

Johnson concedes that Whitley was upset about the assault when she spoke to Officer Mask, but he contends that the 10 to 40 minutes that elapsed between the incident and her statement and the fact that her statement was a response to a question about what happened render the statement inadmissible as an excited utterance. Without citation to authority, Johnson argues that in 10 to 40 minutes, "a person however upset ought to recover her wits." However, courts have held that similar and longer periods of elapsed time between an event and a statement did not negate a conclusion that a statement was an excited utterance, when evidence showed that the declarant had no meaningful opportunity to reflect before making the statement or that the declarant remained dominated by the emotion caused by the incident when the statement was made. *E.g.*, *Apolinar v. State*, 155 S.W.3d 184, 190 (Tex. Crim. App. 2005) (statements made four days after incident admitted as excited utterances when declarant was unconscious during interval and

8

had no meaningful opportunity to reflect between the incident and the statement); *Moon v. State*, 44 S.W.3d 589, 594 (Tex. App.—Fort Worth 2001, pet. ref'd) (court did not err by admitting statements made to officer 30 minutes after incident when officer's testimony showed that declarant was still dominated by emotions and fear caused by the incident).

Johnson also argues that Whitley's statement was self-serving and therefore not an excited utterance. He posits that the 911 recording and Griffin's testimony show that he was having a disagreement with Whitley about his taking L.J. for a visit. In the 911 recording, Whitley said that Johnson had taken L.J. but he did not have permission to do so. Griffin testified that she understood Johnson did have permission to take L.J. and that they "were waiting for him to come get" the child. This discrepancy between Whitley's 911 call and Griffin's testimony is not evidence about what Whitley and Johnson were arguing about. Nothing in the record discloses a self-serving motive. Both Whitley and her infant son had visible injuries when Officer Mask arrived, and Whitley was emotional, upset, angry, and crying about the fact that Johnson hit her baby.

We conclude that the trial court did not abuse its discretion by permitting Officer Mask to testify about what Whitley told him. *See Zuliani*, 97 S.W.3d at 595. We overrule Johnson's first issue.

9

**II. Whitley's statement to Weatherington was made for the purpose of medical treatment.**

The State offered Weatherington's testimony that Whitley told her Johnson had hit M.W. as a statement made for the purpose of medical treatment. In his second issue, Johnson contends that was error because the statements were not made for the purpose of medical diagnosis or treatment. Johnson specifically relies on inconsistent testimony from Weatherington about her role in the medical process.

"A statement that is made for—and is reasonably pertinent to—medical diagnosis or treatment; and describes medical history; past or present symptoms or sensations; their inception; or their general cause" is not "excluded by the rule against hearsay." TEX. R. EVID. 803(4) ("Statement Made for Medical Diagnosis or Treatment"). The rationale for this hearsay exception is the declarant's desire to receive an appropriate medical diagnosis or treatment, and the presumption that she appreciates that the effectiveness of the diagnosis or treatment may depend on the accuracy of the information provided. *See Bautista v. State*, 189 S.W.3d 365, 368 (Tex. App.—Fort Worth 2006, pet. ref'd); *Burns v. State*, 122 S.W.3d 434, 438 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Rule 803(4) does not require that the statements be made to a medical professional for the exception to apply. *See Taylor v. State*, 268 S.W.3d 571, 587 (Tex. Crim. App. 2008); *Bautista*, 189 S.W.3d at 369. "A declarant's statement made to a non-medical professional

10

under circumstances that show he expects or hopes it will be relayed to a medical professional" as pertinent to medical diagnosis or treatment "would be admissible under the rule, even though the direct recipient of the statement is not a medical professional." *Taylor*, 268 S.W.3d at 587.

During trial, defense counsel questioned Weatherington on voir dire about the predicate facts necessary for an admissibility determination. Weatherington testified that she does not diagnose patients, but she discusses her assessment with the physician to help inform the medical plan of care for the patient, such as performing a skeletal survey to check for broken bones in a situation involving domestic violence.

The court and the State also questioned Weatherington about the purpose of her information gathering.

> Trial Court: Are you gathering information that's going to be used for a medical purpose?
>
> Weatherington: No.
>
> . . . .
>
> State: Were you gathering information from [Whitley] in order to help understand how you and the doctor should treat [the baby]?
>
> Weatherington: Yes.
>
> . . . .
>
> Trial Court: [B]ottom line, are you gathering information for the purpose of medical treatment?

| | |
|---|---|
| Weatherington: | Yes. |
| Trial Court: | Okay. Well— |
| Weatherington: | For—because the—as a social worker that works with the medical professional, which is the doctor in this case. |
| Trial Court: | So you're gathering medical information—is that what you're saying—for purpose of a doctor that's going to treat the person? |
| Weatherington: | Yes. |

The court overruled the hearsay objection, noting that the challenged evidence was "certainly subject to cross-examination."

Weatherington's testimony includes some inconsistencies. For example, she first testified that she was not gathering information to be used for a medical purpose, and later she testified that she was gathering information for the physician to use for the purpose of treating the patient. As the factfinder on the preliminary question of admissibility, the trial court was entitled to resolve inconsistencies in Weatherington's testimony and to believe that she was gathering information for the purpose of medical treatment. *See Coble*, 330 S.W.3d at 294; Tex. R. Evid. 104(a).

In addition, the evidence supports a conclusion that Whitley expected her statements to be relayed to a medical professional for the purpose of treating her son. *See Taylor*, 268 S.W.3d at 587. Weatherington met with Whitley in the

emergency department before Whitley and M.W. saw the physician. Weatherington was wearing scrubs and a hospital identification badge. She told Whitley that her role was to assess the situation and determine what needed to be done. Under these circumstances, the trial court could have found that Whitley's statements were made to the social worker with an expectation that they would be relayed to medical professionals for the purpose of diagnosis and treatment of her infant son. *See Taylor*, 268 S.W.3d at 587; *see also French v. State*, No. 01-02-00775-CR, 2004 WL 637789, at *4–5 (Tex. App.—Houston [1st Dist.] Apr. 1, 2004, pet. ref'd) (mem. op.; not designated for publication) (affirming admission of hearsay statements to social worker at children's hospital that were obtained to aid physicians with examination and treatment).

We hold that the trial court did not abuse its discretion by permitting Weatherington to testify about what Whitley told her. *See Zuliani*, 97 S.W.3d at 595. We overrule Johnson's second issue.

## Conclusion

We affirm the judgment of the trial court.

Peter Kelly
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).