**Opinion filed February 5, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00224-CR
_____

## EFRAIN SANTILLAN JR, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 106th District Court**
**Gaines County, Texas**
**Trial Court Cause No. 23-6057**

## M E M O R A N D U M   O P I N I O N

Appellant, Efrain Santillan Jr, pleaded guilty to aggravated assault family violence with a deadly weapon and causing serious bodily injury, a first-degree felony, which was enhanced by at least one prior felony conviction. *See* TEX. PENAL CODE ANN. § 12.42 (West Supp. 2025), § 22.02(b)(1) (West 2019).  Pursuant to the terms of a plea agreement between Appellant and the State, the trial court placed Appellant on deferred adjudication community supervision for a period of ten years.

Due to violations of his community supervision conditions, the trial court subsequently adjudicated Appellant's guilt, revoked his community supervision, and sentenced him to ninety-nine years' imprisonment.

In a single issue, Appellant argues that his trial counsel was ineffective during revocation proceedings in failing to "limit and/or exclude sizable portions of the State's most damaging evidence." We affirm the trial court's judgment.

## I. *Factual and Procedural History*

Appellant was placed on deferred adjudication community supervision on September 28, 2023, after pleading guilty to the offense as indicted. The indictment alleged that Appellant intentionally, knowingly, and recklessly caused serious bodily injury to G.V. [1] by striking her with a hard object and pouring hot oil on her, that he used or exhibited deadly weapons, a metal pipe and hot oil, and that G.V. was a member of his family or household, or a person with whom he had or had had a dating relationship. PENAL § 22.02(b)(1).

### A. *The Application to Adjudicate*

Five months later, on February 27, 2024, the State filed an application to adjudicate Appellant's guilt, alleging, in the State's numbered paragraphs, that Appellant had committed the following acts in violation of his community supervision conditions:

> 2. [allegation no. 30] On or about 02/03/2024, at approximately 17:10, in the city of Seminole, Gaines County, Texas, [Appellant] committed the offenses of Aggravated Assault w/Deadly Weapon, Aggravated Kidnapping, Aggravated Sexual Assault, Interfering w/Public Duties, Resisting Arrest Search or Transport, Unlawful Possession of Firearm

---

[1]Because this case concerns sexual assault allegations, to protect the identity of the complainant, we refer to her by a pseudonym. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"); *see generally* TEX. R. APP. P. 9.8 cmt. ("The rule does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases.").

by Felon, and Violating a Protective order 2+ Times w/in 12 months [against G.V.]. (Report No. 24-000058)[.]

7. [Appellant] failed to report in person to Gaines County CSCD as ordered for an office visit scheduled on 10/26/2023.

10. On or about 02/03/2024, [Appellant] failed to submit his person and/or residence when requested by Gaines County Deputy's in reference to a welfare check being conducted.

16. [Appellant] is delinquent in the amount of $7.00. He failed to pay this fee on or after the 31st day after the date of the judgment was entered[.]

17. [Appellant] is delinquent in the amount of $50.00. He failed to pay this fee within thirty (30) days of the date he was placed on community supervision.

19. To date, [Appellant] has performed zero (0) hours of community service. At the rate of 20 hours per month, [he] should have performed 100 hours of community service.

22. [Appellant] failed to attend and successfully complete the Drug Awareness Class.

24. To date, [Appellant] failed to complete the educational requirements to obtain the high school diploma or GED.

B. *The Adjudication Hearing*

The following evidence was introduced at a hearing on the State's application to adjudicate.

On February 3, 2024, G.V.'s mother called law enforcement, requesting a welfare check on G.V. because she had not heard from G.V. since the day before, when G.V. called her sounding "frantic." Lieutenant Victor Montes with the Gaines County Sheriff's Office responded, and his body camera recording was admitted into evidence at the hearing. In the recording, Lieutenant Montes can be seen waiting

for several minutes for Appellant to exit the RV. Lieutenant Montes testified that he did finally make contact with G.V., who had remained inside the RV while Lieutenant Montes first spoke to Appellant. When Lieutenant Montes spoke with G.V., he noted swelling on G.V.'s face and heavy makeup around one eye. While still in Appellant's presence, G.V. attributed her injuries to a recent fight she had had with a former friend, and she denied that Appellant had hit her. Lieutenant Montes testified that he then requested that Appellant step away, giving Lieutenant Montes an opportunity to speak with G.V. in private. Appellant refused, and following failed attempts to move Appellant away from the immediate area, Appellant was detained and then arrested for interfering in the investigation.

As soon as Appellant was removed from the area, G.V. requested to be taken to the hospital and began repeatedly asking Lieutenant Montes to promise her that she would be "okay." G.V. told Lieutenant Montes that Appellant had threatened to kill her and had beaten her with a chain and hammer. G.V. said that at some unspecified point during their fight, Appellant "shoved his whole fist" up her anal cavity. Lieutenant Montes testified that this was one of the worst domestic violence situations he had ever responded to in over ten years of service.

Lieutenant Montes testified that Appellant was ultimately charged with sexual assault, kidnapping, aggravated assault with a deadly weapon involving family violence, and felon in possession of firearm. Both the hammer and chain were seized at the residence and admitted at the hearing. A firearm and ammunition magazines belonging to the firearm were also confiscated.

Becky Kesner, the sexual assault nurse examiner (SANE) who examined G.V. following the assault, testified that G.V. was "very scared" and tearful during the SANE exam. Kesner obtained G.V.'s medical history as part of her treatment plan, and Kesner's notes were among the medical records admitted at the hearing. According to Kesner, G.V. told her that Appellant started hitting her with a chain

4

before giving her two options: he could either continue to hit her with the chain or "fist her." Believing it "would be quick and over with," G.V. chose Appellant's fist. Appellant then "worked up to his entire fist" into her anus, and despite the presence of "a lot of blood," Appellant refused to take her to the hospital. Kesner noted that there was a "fairly significant tear in [G.V.'s] anus" and substantial bruising all over G.V.'s body. Kesner additionally identified a "chain pattern" bruise on G.V.'s abdomen. Photographs depicting G.V.'s injuries on her face, shoulder, neck, hands, legs, and buttocks were also admitted.

Gaines County Sheriff's Office Detective Blain Stanfield testified that prior to the hearing, G.V. had reached out requesting an opportunity to recant her recorded statement to law enforcement. G.V. claimed that someone else had assaulted her, and the "anal fisting" she previously described had been a consensual sexual act. Detective Stanfield testified that G.V.'s characterization of the act as consensual was a departure from her prior statements to Lieutenant Montes and medical staff. Detective Stanfield further testified that as part of his investigation, he reviewed recordings of telephone calls from the jail between Appellant and G.V., wherein Appellant was heard instructing G.V. how to testify at the adjudication hearing.

G.V. testified at the hearing. Although G.V. confirmed she had been assaulted on February 3, 2024, and had required treatment for multiple injuries, including a broken collarbone and multiple lacerations, she denied Appellant's involvement. G.V. testified that she felt pressured by law enforcement to blame Appellant.

With respect to the remaining allegations, Julie Miller, a probation officer who supervised Appellant testified that he failed to report as ordered on October 26, 2023, "failed to submit for a welfare check" on February 3, 2024, was delinquent in the payment of fees, had failed to perform any court-ordered community service hours, and had failed to attend and successfully complete a drug awareness class. On cross-

5

examination, Miller acknowledged that Appellant had since caught up on the payment of his fees.

At the conclusion of the hearing, the trial court made a finding of "true" for all allegations with the exception of allegation number 16, which alleged that Appellant failed to pay a $7 fee. The trial court adjudicated Appellant guilty, revoked his community supervision, and sentenced him to imprisonment for a term of ninety-nine years.

## II. *Standard of Review and Applicable Law*

We review an ineffective-assistance-of-counsel complaint under the two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on a claim of ineffective assistance of counsel, Appellant must satisfy both prongs of the *Strickland* standard: (1) performance and (2) prejudice. *Strickland*, 466 U.S. at 687; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). The failure to succeed on either *Strickland* prong is fatal to a claim of ineffectiveness. *Perez*, 310 S.W.3d at 893.

First, Appellant must show that trial counsel's representation was deficient in that it fell below an objective standard of reasonableness. *Perez*, 310 S.W.3d at 892–93. Second, Appellant must show that trial counsel's deficient performance prejudiced his defense—that is, counsel's errors were so serious as to deprive Appellant of a fair trial and, as a result, there is a reasonable probability that the outcome of his trial would have been different but for counsel's errors. *Id.* at 893; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 687–88). The "reasonable probability" component must rise to the level such that it is sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *Walker v. State*, 406

S.W.3d 590, 599 (Tex. App.—Eastland 2013, pet. ref'd) (quoting *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012)).

There is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Isham v. State*, 258 S.W.3d 244, 250 (Tex. App.—Eastland 2008, pet. ref'd). To overcome this deferential presumption, a claim of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 814; *Walker*, 406 S.W.3d at 593–94. In this regard, we will not inquire into counsel's trial strategy unless no possible basis exists to support such strategy or tactics. *Johnson v. State*, 614 S.W.2d 148, 152 (Tex. Crim. App. [Panel Op.] 1981). Thus, in our analysis, we must make every effort to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

### III. *Analysis*

In his sole issue on appeal, Appellant contends that his trial counsel rendered ineffective assistance because he failed to "exclude and/or limit critical portions of the State's evidence at the revocation hearing." Specifically, Appellant argues that counsel should have objected on the basis of hearsay to the admission of (1) G.V.'s emergency room and sexual assault examination records; (2) testimony from Miller, Lieutenant Montes, and Detective Stanfield; and (3) Lieutenant Montes's body camera footage.

At the outset, we note that Appellant did not file a motion for new trial. As such, Appellant's trial counsel did not have the opportunity to explain or defend his actions or strategy or respond to what Appellant now contends constitutes deficient performance. Thus, for Appellant to demonstrate on direct appeal that his trial counsel rendered ineffective assistance, the record must affirmatively show that his counsel's representation "fell below an objective standard of reasonableness as a

matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *see Strickland* 466 U.S. at 687. Furthermore, when, as here, the record does not divulge counsel's reasoning or strategies, we "presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that [trial counsel] 'made all significant decisions in the exercise of reasonable professional judgment.'" *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992) (quoting *Strickland*, 466 U.S. at 690); *see State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008); *Screws v. State*, 630 S.W.3d 158, 164–65 (Tex. App.—Eastland 2020, no pet.).

We first address the statements that, for reasons explained below, the trial court would not have erred in overruling a hearsay objection, had one been made, because either a hearsay exception applied, or the statement was simply not hearsay. *See Poor v. State*, 715 S.W.3d 15, 41 (Tex. App.—Eastland 2024, pet. ref'd) ("When alleging ineffective assistance of counsel based on the failure to object, an appellant must demonstrate that the trial court would have erred in overruling an objection had trial counsel made one." (first citing first *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); and then citing *Munoz v. State*, No. 11-13-00139-CR, 2015 WL 4053483, at *5 (Tex. App.—Eastland June 30, 2015, pet. ref'd) (mem. op., not designated for publication)).

A. *Hearsay Exceptions*

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Hearsay is inadmissible unless made admissible by statute or rule. TEX. R. EVID. 802; *Bahena v. State*, 634 S.W.3d 923, 927 (Tex. Crim. App. 2021). "When hearsay contains hearsay, the Rules of Evidence require that each part of the combined statements be within an exception

to the hearsay rule." *Sanchez v. State*, 354 S.W.3d 476, 485–86 (Tex. Crim. App. 2011) (citing TEX. R. EVID. 805).

1. *Business Records & Medical Records Exceptions*

Relevant to Appellant's challenge to the admissibility of G.V.'s emergency room and sexual assault examination records, we consider the business record and the medical-diagnosis-or-treatment exceptions to the hearsay rules. *See* TEX. R. EVID. 803(4), (6).

A record of an act, event, condition, opinion, or diagnosis, commonly called a "business record," is admissible hearsay if: (A) the record was made at or near the time by, or from information transmitted by, someone with knowledge; (B) the record was kept in the course of a regularly conducted business activity; (C) the making of the record was a regular practice of that activity; (D) all these conditions are shown by the testimony, affidavit, or unsworn declaration of the custodian or another qualified witness; and (E) the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. TEX. R. EVID. 803(6); *Bahena*, 634 S.W.3d at 927–28.

A "statement made for medical diagnosis or treatment" is a "statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." TEX. R. EVID. 803(4). The identity of a perpetrator may be pertinent to a patient's diagnosis or treatment, particularly with regard to ensuring the victim's safety when the perpetrator is a family or household member. *Taylor v. State*, 268 S.W.3d 571, 591 (Tex. Crim. App. 2008) (citing *Munoz v. State*, 288 S.W.3d 55, 58–59 (Tex. App.—Houston [1st Dist.] 2009, no pet.)); *Parham v. State*, No. 14-23-00782-CR, 2024 WL 5250427, at *11 (Tex. App.—Houston [14th Dist.] Dec. 31, 2024, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant failed to show counsel had been ineffective

9

in failing to object to the admission of medical records, wherein the victim identified appellant as the perpetrator).

All G.V.'s admitted medical records, including the sexual assault examination records, were proved up at the hearing by testimony consistent with the hearsay exception requirements contained in Rule 803(6). However, Appellant maintains on appeal that the State failed to show that the hearsay within the medical records—i.e., G.V.'s statements—were admissible, arguing that the statements do not fall under the Rule 803(4) hearsay exception for statements made for medical diagnosis or treatment.

The record demonstrates that G.V. was admitted to the emergency room and thereafter underwent a SANE exam for treatment from her injuries sustained from an assault. The mere fact that G.V. was transported to the hospital and a SANE exam was conducted as part of a criminal investigation does not strip the examinations performed and statements obtained thereof of their medical purpose. Courts have repeatedly recognized that these mixed purposes do not render the examination non-medical or transform the patient's statements into purely investigative declarations. *See Taylor*, 268 S.W.3d at 589 (providing that in the context of an emergency medical examination, "it seems only natural to presume that adults . . . will have an implicit awareness that the doctor's questions are designed to elicit accurate information and that veracity will serve their best interest"); *Franklin v. State*, 459 S.W.3d 670, 676 (Tex. App.—Texarkana 2015, pet. ref'd) (noting that the Rule 803(4) hearsay exception "is based on the assumption that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate diagnosis and treatment") (quoting *Bautista v. State*, 189 S.W.3d 365, 368 (Tex. App.—Ft. Worth 2006, pet. ref'd)); *see also, e.g.*, *Trollinger v. State*, No. 11-22-00089-CR, 2023 WL 5622111, at *3 (Tex. App.—Eastland Aug. 31, 2023, no pet.) (mem. op., not designated for publication)

10

("That [the victim] underwent a sexual assault examination at the referral of law enforcement does not change the medical nature of the examination."). Moreover, we can infer from the record that G.V. knew that it was important to tell the treating physicians in the emergency room and thereafter the SANE the truth in order to obtain proper medical treatment or diagnosis. *See Taylor*, 268 S.W.3d at 589; *Henslee v. State*, No. 11-17-00163-CR, 2019 WL 3451490, at *4 (Tex. App.—Eastland July 31, 2019, pet. ref'd) (mem. op., not designated for publication). There is nothing in the record to indicate otherwise.

When—as here—a medical assessment was conducted and the documented questions were asked to determine the extent of the victim's injury, the mechanism of trauma, possible internal damage, and risks of further harm, the victim's responses are reasonably pertinent to medical diagnosis or treatment and therefore fall squarely within Rule 803(4). *See, e.g.*, *Lumsden v. State*, 564 S.W.3d 858, 888 (Tex. App.—Fort Worth 2018, pet. ref'd) ("[W]e held that [the SANE's] testimony was admissible under the medical-diagnosis-or-treatment exception to the hearsay rule. Her handwritten report is similarly admissible under the medical-diagnosis-or-treatment exception to the hearsay rule."). Given this legal framework, Appellant has not established that trial counsel's performance fell below an objective standard of reasonableness by declining to object to hearsay in the medical records. *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142.

### 2. *Excited Utterance Exception*

We turn to G.V.'s statements to Lieutenant Montes, either testified to by Lieutenant Montes at the hearing or admitted via Lieutenant Montes's body camera recording. Another exception to the hearsay rule allows for the admissibility of hearsay testimony when the testimony includes a statement that constitutes an excited utterance. *Templeton v. State*, 629 S.W.3d 616, 626 (Tex. App.—Eastland 2021, no pet.). An excited utterance is "[a] statement relating to a startling event or

11

condition, made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2). "The type of emotion that dominates the declarant is not critical; what is controlling is whether, at the time the statement was made, the declarant was still dominated by the emotions, excitement, fear, or pain that was caused by the startling event or condition." *Templeton*, 629 S.W.3d at 626. "Therefore, if the statement is an excited utterance, there can be no abuse of discretion to admit it." *Id.* (citing *Osbourn v. State*, 92 S.W.3d 531, 537–38 (Tex. Crim. App. 2002)).

When determining the admissibility of a statement that is offered as an excited utterance, we reflect on three concerns:

> (1) the "exciting event" should be startling enough to evoke a truly *spontaneous* reaction from the declarant; (2) the reaction to the startling event should be quick enough to avoid the possibility of fabrication; and (3) the resulting statement should be sufficiently "related to" the startling event, to ensure the reliability and trustworthiness of that statement.

*McCarty v. State*, 257 S.W.3d 238, 241 (Tex. Crim. App. 2008). Nevertheless, "under the excited utterance exception, the startling [or exciting] event may trigger a spontaneous statement that relates to a *much earlier* incident." *Id.* at 240. This comports with the purpose of the exception, which assumes that the person who makes an excited utterance is not then capable of the kind of reflection that would enable that person to fabricate the information that is related. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). Thus, "[t]he trustworthiness of the statement is founded on the fact that it is the *event* that speaks through the person and not merely the declarant relating the event." *Tienda v. State*, 479 S.W.3d 863, 875 (Tex. App.—Eastland 2015, no pet.) (emphasis added) (citing *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003)); *see Evans v. State*, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972). An occurrence of an assault, sexual or physical, may

qualify as a startling or exciting event. *Luna v. State*, No. 11-22-00259-CR, 2024 WL 3056135, at \*6 (Tex. App.—Eastland June 20, 2024, no pet.) (mem. op., not designated for publication); *Wear v. State*, No. 02-16-00170-CR, 2017 WL 929529, at \*1 (Tex. App.—Fort Worth Mar. 9, 2017, no pet.) (mem. op., not designated for publication).

Importantly, the evidence at the hearing established that Lieutenant Montes's presence at Appellant's and G.V.'s residence interrupted an *ongoing* assault. As soon as Appellant was removed from the area, G.V. blurted out that she needed to be transported to the hospital for a head wound. G.V. then began crying, and any statements regarding Appellant's assault on G.V. were followed or preceded by G.V.'s requests for assurances that Lieutenant Montes keep her safe. As Appellant notes in his brief, G.V. even attributed Lieutenant Montes to saving her life.

Under these circumstances, trial counsel could have reasonably concluded that the emotions and fear experienced by G.V. from the assault at the time she made the complained-of statements to Lieutenant Montes were likely ongoing—in other words, G.V.'s statements fell under the excited utterance exception to the hearsay rules and were therefore admissible. *See, e.g.*, *Donald v. State*, 543 S.W.3d 466, 479–80 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding that domestic assault victim's recorded statements to police were excited utterances); *see also Rodriguez v. State*, No. 11-18-00101-CR, 2020 WL 1467259, at \*4 (Tex. App.—Eastland Mar. 26, 2020, no pet.) (mem. op., not designated for publication) ("Trial counsel could also have reasonably concluded that [the complainant's] statements to [an officer] were admissible as excited utterances in light of the testimony that [the complainant] was crying and seemed frightened."); *McFadden v. State*, No. 11-16-00221-CR, 2018 WL 4137594, at \*6 (Tex. App.—Eastland Aug. 30, 2018, no pet.) (mem. op., not designated for publication) (considering that minimal amount of time had elapsed between the exciting event and statement made). Accordingly,

Appellant has not established that trial counsel's performance fell below an objective standard of reasonableness by declining to object to Lieutenant Montes's testimony concerning G.V.'s statements or to the admission of Lieutenant Montes's body camera recording. *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142.

B. *Miller's Statements*

We next address statements made by Miller that Appellant argues should have been objected to on the basis of hearsay. Appellant specifically argues that Miller improperly based her testimony on the "chronos"—documents that contained hearsay and were never admitted into the record. On the face of the record, however, Miller at no point appears to be reading off any documents during her testimony. While Miller references "chronos" in cross-examination, it is in response to a question asked by counsel:

> [TRIAL COUNSEL]: What is this failure to report on 10/26? You might be able -- I've got the chronos here. Let me get to it. Did he -- I just don't see from the -- from -- 10/26/23, it just says, Appointment scheduled and assist- -- and -- but that's all it says. And -- and I'm not sure how he missed that.
>
> [MILLER]: So probably what happened -- he was on intensive supervision, so he was probably reporting twice a month.
>
> [TRIAL COUNSEL]: Okay.
>
> [MILLER]: That appointment was set on the 26th. If he missed that appointment or attempted to reschedule it without coming in, the appointment was going to be made. There was no chrono made that -- that an office visit was done on that day, so -- which tells us that he didn't report in person.
>
> [TRIAL COUNSEL]: Okay. So you wouldn't necessarily know if it was missed, but you would note if he made it? Is that what you're saying?

> [MILLER]: If he reported in person on that day, it would be chronoed that he reported in person.

It is unclear what "out of court statement" Appellant argues is presented here through "chronos." And Miller's testimony may have been entirely based on her knowledge as his assigned probation officer. Accordingly, we cannot say that counsel was ineffective in failing to object to Miller's testimony. *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142.

C. *Strategic Motives*

We now consider the last statements being challenged on appeal: Detective Stanfield's testimony that G.V.'s statements to him were consistent with her statements to Lieutenant Montes, EMS, and hospital staff. As we noted previously, because the record contains no direct evidence of trial counsel's reasons or explanations for the challenged conduct, counsel's performance must be reviewed with great deference and without resort to hindsight, and we "will assume that counsel had a [valid] strategy if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143. Although Stanfield's brief statements contained hearsay, Stanfield was the last of the State's witnesses to testify, and by then, G.V.'s prior statements had already been admitted into evidence, as had her testimony recanting her prior statements. Therefore, counsel's decision not to object to two sentences containing information already in the record may have been entirely strategic. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002) (providing that a defendant must show that there was no plausible, professional reason for counsel's specific acts or omissions). On this record, we cannot conclude that trial counsel's decision to *not* object to hearsay was so outrageous that no competent attorney would have engaged in it. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

D. *Limiting Instruction*

To the extent Appellant additionally argues that his trial counsel should have requested a limiting instruction, Appellant has provided no authority, nor have we found any, requiring a limiting instruction in a revocation proceeding before the trial court. "The purpose of a limiting instruction is to 'restrict evidence to its proper scope and instruct the *jury* accordingly.'" *Phillips v. State*, 193 S.W.3d 904, 911 (Tex. Crim. App. 2006); *see* TEX. R. EVID. 105(a) ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the *jury* appropriately[.]" (emphasis added)). "This doctrine is a sensible one because otherwise a jury might sit through most of a trial under the mistaken belief that certain evidence is admissible for all purposes when, in fact, it is not." *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007). However, where there is no jury and the evidence is being admitted before a judge, we question the existence of the same risk since, unlike laymen jurors, the proper scope of evidence in this context is familiar to the judiciary. A limiting instruction would have been an unusual exercise in futility where the trial court is instructing itself. In any event, the trial court is presumed to disregard offered information that is inadmissible or evidentiary matters "inappropriate for consideration in his role as fact-finder." *See, e.g., Lackey v. State*, 364 S.W.3d 837, 843 (Tex. Crim. App. 2012). Therefore, counsel would not have been ineffective in declining to request a limiting instruction in this instance.

E. *Conclusion*

Appellant has not controverted the strong presumption that his trial counsel's performance was within prevailing professional norms. *See Strickland*, 466 U.S. at 689; *Isham*, 258 S.W.3d at 250. Appellant's ineffective-assistance claim therefore fails because he has not proven by a preponderance of the evidence that his trial

16

counsel's performance was deficient.  *See Lopez*, 343 S.W.3d at 142.  We overrule Appellant's sole issue on appeal.

IV.  <em>This Court's Ruling</em>

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS

JUSTICE

February 5, 2026

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.